

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON, ) No. 68468-0-I
)
Respondent, )
)
v. ) UNPUBLISHED OPINION
)
KEVIN GARNETT LARSON, SR., )
)
Appellant. ) FILED: November 25, 2013

SCHINDLER, J. — In this prosecution for child molestation, the trial court properly

admitted evidence of prior sexual misconduct under ER 404(b) to rebut the defense of

accident or mistake and to show common scheme or plan. While the court failed to give

a proper limiting instruction, the court did not abuse its discretion in ruling that the error

was harmless and did not warrant a new trial. We affirm.

FACTS

The State charged Kevin Garnett Larson, Sr. with one count of first degree child

molestation of nine-year-old A.O. on September 20, 2010.[1] Prior to trial, the State

moved to admit evidence that Larson had sexually assaulted A.O.'s mother B.O. several

years earlier, and had molested his nieces S.S. and L.W. many years earlier. The court

admitted the evidence under RCW 10.58.090.

---

[1] RCW 9A.44.083. Although King County also charged Larson with molesting his niece, N.L.,
those charges were dropped when it was determined that the molestation occurred in Pierce County.

At trial, the evidence established that in August 2010, Larson moved into an apartment with his son Shon Larson, Shon's girlfriend B.O., their 16-month-old son, and B.O.'s nine-year-old daughter A.O. Shon, B.O., and the children slept in the bedroom and Larson slept on the living room couch.

On September 19, 2010, Shon, B.O., and Larson spent the day watching television and drinking beer and vodka. That evening, the children went to sleep in the bedroom. Shon and B.O. fell asleep on a mattress in the living room and Larson fell asleep on the couch.

A.O. testified that she woke up in the middle of the night because she felt something wet on her feet. The light from the television allowed her to see Larson kneeling beside the bed. Her pajama bottoms were rolled up to her thighs and Larson was sucking on her toes and licking her feet and shin. Her thighs were wet. Larson eventually touched and licked A.O.'s genital area over her clothes. When A.O. rolled over, Larson immediately left the bedroom and went into the bathroom. A.O. then ran to her mother and woke her up.

B.O. testified that around 4:00 a.m., A.O. came into the living room crying and shaking. A.O. told her mother that Larson had been in her bedroom licking her legs. B.O. said she had never seen A.O. so scared. B.O. shoved Larson out of the apartment and followed him to a bus stop where she assaulted him. A passing police officer found her standing over Larson, crying and yelling hysterically. Shon corroborated B.O.'s testimony.

2

On cross examination, A.O. and B.O. testified that A.O.'s pajamas "were soaked" after Larson left the bedroom. Defense counsel also elicited testimony from Shon about the amount of beer Larson consumed that day and the fact that A.O. smelled strongly of beer.

Seattle Police Department Detective Jess Pitts testified that she tape-recorded an interview with A.O. nine days after the incident. The court played the tape recording for the jury. A.O.'s statements during the tape-recorded interview were consistent with her testimony at trial.

Joanne Mettler, a registered nurse practitioner and child abuse specialist, testified that she examined A.O. the day after the interview with Detective Pitts. A.O. made essentially the same allegations to Mettler that she had made previously to her mother and Detective Pitts.

L.W., Larson's niece by marriage, testified to incidents that occurred roughly 20 years earlier when she was between nine and 12 years old. One incident occurred when she was standing at the bathroom sink. L.W. said that Larson gave her a "bear hug" from behind and pressed what felt like an erect penis against her back. In another incident when L.W. and Larson were wrestling and tickling each other, he pinned her face-down and again pressed his erect penis against her back. L.W. told her sister S.S. what happened and they agreed to never be alone with Larson. L.W. did not report the incidents to anyone else until she was an adult.

L.W.'s sister S.S. testified to incidents with Larson during roughly the same time period. S.S. testified that when she was approximately five years old and sleeping at

3

Larson's house, she awoke to find him laying on top of her and moving rhythmically up and down her leg. When he fell asleep several minutes later, S.S. moved to a bed across the room.

A similar incident occurred when S.S. was around 11 or 12 years old. S.S. said she was sleeping on a couch at a relative's house and woke up to find Larson's hand under her shirt holding her breast. S.S. told L.W. about the second incident but, like her sister, did not report it to others until she was an adult. Over defense objections, the trial court admitted photographs of L.W. and S.S. when they were children. The court concluded the photographs were relevant to show the similarity in the ages of Larson's victims and were not so prejudicial as to warrant exclusion under ER 403.

B.O. testified to an incident that occurred in the same apartment four years before the incident involving A.O. B.O. said that she awoke to find Larson licking her genital area. Shon kicked Larson out of the apartment and they were estranged for several years. After Larson later apologized for the incident with B.O., he and Shon reconciled.

At the close of the evidence, the court ruled that in addition to being admissible under RCW 10.58.090, Larson's prior sexual misconduct was admissible under ER 404(b) to rebut the defense of accident or mistake.

The jury convicted Larson of child molestation in the first degree of A.O. After the verdict but prior to sentencing, the Washington Supreme Court held in State v. Gresham, 173 Wn.2d 405, 429, 269 P.3d 207 (2012), that RCW 10.58.090 was unconstitutional. Larson filed a motion for a new trial, arguing that absent RCW

10.58.090, the prior misconduct evidence was admissible only under ER 404(b). Because the court had not given a proper limiting instruction, Larson claimed he was entitled to a new trial. The court denied the motion for a new trial, ruling the error was harmless because the other evidence against Larson was overwhelming. Larson appeals.

## ANALYSIS

Larson contends the trial court abused its discretion in admitting evidence of his prior sexual misconduct under RCW 10.58.090 and ER 404(b). The State concedes that under Gresham, the court erred in admitting the evidence under RCW 10.58.090. But the State argues that the court properly admitted the evidence under ER 404(b). We agree.

We review evidentiary rulings for abuse of discretion. Gresham, 173 Wn.2d at 419. Under ER 404(b), evidence of prior sexual misconduct may be admitted to show, among other things, common scheme or plan or the absence of mistake or accident.

In this case, the court admitted Larson's prior sexual misconduct to show the absence of mistake or accident. The defense theory at trial was that Larson is an alcoholic, he was intoxicated while in a relatively unfamiliar apartment, and he stumbled into the bedroom "where A.O. misconstrued his conduct." In closing argument, defense counsel argued that what A.O. felt on her leg was "not saliva. It's beer. He spilled beer on her. And that's what happened. He spilled beer on her, and in his own drunken inept way he is trying to clean it up." But on appeal, Larson focuses exclusively on the common scheme or plan basis for admitting the prior sexual misconduct evidence under

5

ER 404(b). Because common scheme or plan and absence of mistake are distinct alternatives for the admission of evidence under ER 404(b), Larson's failure to provide any argument or authority as to the latter basis for admitting the evidence is fatal to his contention. RAP 10.3(a)(6); State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004); see State v. Baker, 89 Wn. App. 726, 732-37, 950 P.2d 486 (1997) (distinguishing common scheme or plan and absence of mistake or accident bases for admission under ER 404(b)).

Furthermore, even if Larson had properly challenged the court's basis for admitting the evidence, he could not demonstrate an abuse of discretion. ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[2]

ER 404(b) misconduct evidence may be admitted to rebut a claim of mistake or accident if it is sufficiently similar to the charged acts to "meet a threshold of noncoincidence." Baker, 89 Wn. App. at 734-35. The threshold is crossed when the recurrence of similar acts creates an improbability of coincidence that tends to negate a defense of accident or mistake. Baker, 89 Wn. App. at 735. Under the doctrine of chances, "recurrence or repetition of the act decreases the likelihood that the act was

---

[2] (Emphasis added.)

an accident."[3]

Here, the repetition and similarity of Larson's prior acts support admission under ER 404(b) to rebut the defense of accident or mistake. Larson had a familial relationship or lived in the same household with all four victims. Larson took advantage of the living situation to commit his offenses. With respect to S.S., B.O., and A.O., he snuck into their rooms at night and sexually assaulted them while they were sleeping. S.S., L.W., and A.O. were all young girls at the time Larson molested them. Although B.O. was an adult victim, the manner in which Larson sexually assaulted her was strikingly similar to the manner in which he molested A.O. In short, the repetition and similarities between Larson's prior sexual misconduct and his current offense were sufficient to demonstrate noncoincidence.[4]

The prior acts of misconduct were also admissible to show a common scheme or plan under ER 404(b). Prior misconduct evidence may be admitted to show a common scheme or plan if it is " '(1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial.' "

---

[3] Eric D. Lansverk, Admission of Evidence of Other Misconduct in Washington To Prove Intent or Absence of Mistake or Accident: The Logical Inconsistencies of Evidence Rule 404(b), 61 Wash. L. Rev. 1213, 1226-28 (1986) ("The doctrine of chances may be used to negate a claim of accident by showing the improbability that the act was inadvertent. . . . Under the doctrine, recurrence or repetition of the act decreases the likelihood that the act was an accident or the result of a mistaken belief. . . . The judge must decide whether sufficient similarity exists to justify a reasonable finding by a rational jury of noncoincidental acts. . . . In making the threshold determination, judges must focus on the factors that make the coincidence objectively or statistically improbable: repetition of and similarity between the acts.").

[4] See Baker, 89 Wn. App. at 735 (similarities in relationships, ages, scenarios, and touching supported admission of prior acts evidence to rebut defense of accident).

State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (quoting State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995)).

Larson contends the second and fourth factors are not satisfied here. As to the second factor, he correctly points out that a common scheme or plan "may be established by evidence that the Defendant committed markedly similar acts of misconduct against similar victims under similar circumstances." Lough, 125 Wn.2d at 852. Evidence of such a plan " 'must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations.' " DeVincentis, 150 Wn.2d at 19 (quoting Lough, 125 Wn.2d at 860). Contrary to Larson's assertions, there were marked similarities between his prior misconduct and his molestation of A.O. As previously discussed, the incidents with S.S. and L.W. occurred under circumstances markedly similar to those involving A.O.[5] And with the exception of the victims' ages, the sexual assault of B.O. was essentially identical to the molestation of A.O.

With respect to the fourth element, Larson contends the trial court abused its discretion by concluding that the probative value of his prior misconduct outweighed its prejudicial effect. "Generally, courts will find that probative value is substantial in cases

---

[5] See e.g., State v. Kipp, 171 Wn. App. 14, 21-22, 286 P.3d 68 (2012) (facts showed common scheme or plan where victims were of similar ages, were defendant's nieces, and were molested in his house and their grandparents' house); Gresham, 173 Wn.2d at 422-23 (evidence showed common scheme or plan where defendant took trips with young girls and fondled their genitals at night when other adults were asleep); State v. Kennealy, 151 Wn. App. 861, 889, 214 P.3d 200 (2009) (facts showed "design or pattern to gain the trust of children . . . in order to sexually molest them" where charged victims were between ages of 5 and 7 and lived in same complex, uncharged victims were nieces and daughter between ages of 7 and 13, acts with all victims occurred out of view of others, children trusted defendant because of family relation or gifts and conversation, victims were touched under and outside of their clothing on their vaginas, and sexual acts occurred more than once with most of the victims).

where there is very little proof that sexual abuse has occurred, particularly where the only other evidence is the testimony of the child victim." State v. Sexsmith, 138 Wn. App. 497, 506,157 P.3d 901 (2007). Here, the State's case rested in large part on the credibility of A.O. Moreover, the misconduct evidence was highly probative of the defense theory of the case, i.e., that the touching was accidental or misinterpreted. Accordingly, the court did not abuse its discretion in concluding that the probative value of the prior misconduct evidence outweighed any resulting prejudice.

Larson next contends, and the State concedes, that the trial court erred in failing to give an instruction limiting the jury's use of the misconduct evidence to the purposes for its admission under ER 404(b). When a court admits evidence under ER 404(b), the defendant is entitled to an instruction informing the jury of the specific purpose of the evidence and prohibiting them from using it to conclude that the defendant has a particular character and acted in conformity with that character. Gresham, 173 Wn.2d at 423-24; see State v. Griswold, 98 Wn. App. 817, 825, 991 P.2d 657 (2000) ("the court should give limiting instructions to direct the jury to disregard the propensity aspect of the evidence and focus solely on its evidentiary effect tending to show common scheme or plan"). No such instruction was given in this case. That omission was error. Gresham, 173 Wn.2d at 424-25.

However, an error under ER 404(b) is harmless unless " 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " Gresham, 173 Wn.2d at 433 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). In denying Larson's motion for a new trial, the trial

9

court ruled the error was harmless "because of the overwhelming nature of the remainder of the evidence." We review a trial court's denial of a new trial for an abuse of discretion. State v. Bourgeois, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997); State v. Slone, 133 Wn. App. 120, 130, 134 P.3d 1217 (2006) ("We find no abuse of discretion in the trial court's ruling that this violation of its order in limine was a nonprejudicial, harmless error."). We conclude the court did not abuse its discretion for several reasons.

First, while Larson correctly points out that the court's instruction regarding the misconduct evidence allowed the jury to use it for "any matter to which it is relevant," the instruction also emphasized that the evidence was contextual in nature and not to be given conclusive weight:

> In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation, evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.
> However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the Information. Bear in mind as you consider this evidence at all times, the State has the burden of proving that the defendant committed each of the elements of the offense charged in the Information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the Information.[6]

Second, the prosecutor repeatedly told the jury that the evidence had a limited, nonpropensity purpose:

> Now, this testimony is not admitted again to show that Mr. Larson is a bad person or you shouldn't like him or any of those things. It's admitted to corroborate [A.O.'s] testimony. . . . That this man molests children while they sleep . . . .

---

[6] (Emphasis added.)

. . . .

> I was very clear in my closing arguments about why -- that the testimony of [S.S.] and [L.W.], in addition to the evidence about the assault on [B.O.] was introduced. It's not to throw dirt around. I don't want you to convict Mr. Larson because you think he is a drunk or not a good person or whatever. I want you to convict Mr. Larson because he molested [A.O.] And the reason that that testimony came in, and the reason that you have a jury instruction on how to use that evidence, it's not because I decided that I want to throw some dirt around. It's because the law allows victims of prior assaults to come in and testify about their experiences, and that you can use that testimony for any purpose that you deem relevant. And the reason it's relevant is it goes to what Mr. Larson's intent was when he touched [A.O.]
>
> . . . .
>
> The reason this evidence comes in is because it is evidence of what Mr. Larson's intent was when he entered [A.O.'s] bedroom. It is evidence that goes against this cockamamie theory that Mr. Larson entered that bedroom, and accidentally spilled a beer on [A.O.], and that's why she is wet.[7]

Thus, the prosecutor clearly indicated that the evidence was admitted to show either a common scheme or plan or the absence of mistake or accident. Significantly, the prosecutor never encouraged the jury to use the evidence for propensity.[8]

Third, A.O.'s testimony did not stand alone but, rather, was strongly supported by those who heard her statements and observed her condition mere moments after the incident. A.O.'s testimony was also consistent with her statements to others.

Fourth, while misconduct evidence cannot be used to show that the defendant has a certain character and acted in conformity with that character, such evidence can be used to show that the defendant's conduct in the current case conformed to the

---

[7] (Emphasis added.)

[8] See State v. Williams, 156 Wn. App. 482, 492, 234 P.3d 1174 (2010) ("[T]he prosecutor effectively gave the jury a limiting instruction during closing argument" by telling them they could not consider prior convictions for propensity and could only consider it for "a common scheme or plan."); City of Seattle v. Patu, 108 Wn. App. 364, 377, 30 P.3d 522 (2001) (noting that City "did not argue that the conviction made it more likely that Patu was a bad person or that he had a propensity to obstruct the police").

11

conduct alleged in the prior allegations. Gresham, 173 Wn.2d at 423-24. In other words, where misconduct evidence is admitted because of its similarities to the charged conduct, the proper and improper uses of the evidence are almost indistinguishable. Given the subtlety of this distinction, it is highly unlikely that a proper limiting instruction would have affected the jury's verdict.

Finally, in the context of all the evidence presented, the defense theory that Larson merely spilled beer on A.O. and that she misperceived the incident strained credulity.

In sum, considering the evidence, instructions, and arguments, and given the trial court's superior position for determining the impact of any errors,[9] we conclude the court did not abuse its discretion in denying Larson's motion for a new trial.

Larson also contends the court abused its discretion in admitting photographs of his nieces taken around the time he allegedly molested them. Larson contends the photos were not relevant, and even if relevant, were more prejudicial than probative under ER 403. He argues that when combined with the court's instructional error, the error in admitting the photographs warrants a new trial. We disagree.

Under the cumulative error doctrine, trial errors that do not warrant a new trial by themselves may warrant a new trial when considered cumulatively. State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Here, even if the court abused its discretion in admitting the photographs, a new trial is not warranted. Viewed in the context of all the

---

[9] Cf. State v. Walton, 5 Wn. App. 150, 152-53, 486 P.2d 1118 (1971) ("We believe the trial judge was in the most favorable position to observe the impact of the statement, and do not find in the record evidence of a sufficient nature to allow us to hold that there has been an abuse of discretion by the trial court."); State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997) (trial court is in best position to most effectively determine if prosecutorial misconduct prejudiced a defendant's right to a fair trial).

evidence in this case, the photographs generated little prejudice. The live testimony of the women depicted in the photographs was far more damaging to the defense than the two photographs. And as the trial court noted in its ruling denying a new trial, the totality of the evidence against Larson was overwhelming. Any cumulative error did not warrant a new trial.

Affirmed.

Schindler, J.

WE CONCUR:

Cox, J.

Spearman