# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59793-4-II |
| Respondent, | |
| v. | |
| CHRISTOPHER ROBIN FITZGERALD, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Christopher Fitzgerald appeals his convictions of second degree child rape, second degree rape due to the victim's inability to consent, and third degree child rape, and his sentences. The offenses involved a 13-year-old victim and a 14-year old victim who were friends with one of his daughters. The trial court admitted evidence of Fitzgerald's prior conviction of third degree child molestation of another daughter under ER 404(b) as evidence of a common scheme or plan. The court imposed the third degree rape sentence consecutively to the sentences for the other two offenses.

We hold that (1) the trial court did not abuse its discretion when it admitted evidence of Fitzgerald's prior conviction as evidence of a common scheme or plan; (2) as the State concedes, the convictions of second degree child rape and second degree rape due to the victim's inability to consent violate the prohibition against double jeopardy; and (3) the court erred when it

imposed the consecutive sentence.[1]  We decline to consider the issues Fitzgerald raises in his SAG because they depend on matters outside of the record before us or raise weight or credibility issues we do not review.

Accordingly, we affirm Fitzgerald's convictions, but we remand for the trial court to determine which conviction must be vacated on double jeopardy grounds and for resentencing, and to reimpose the sentence on the third degree child rape conviction as a concurrent sentence.

FACTS

*Background*

In the summer of 2021, Fitzgerald spent considerable time with his daughter KF and several of her friends at his mother's house.  Fitzgerald frequently took several of the girls, who were then 13 and 14 years old, to a nearby store where he purchased them assorted snacks, vapes, and alcoholic beverages.  He also would take them on drives to rural areas and sometimes let them drive his vehicle.

At the end of August, three of these girls, MC, RC and KK, disclosed to some of their parents that Fitzgerald had engaged in inappropriate sexual contact with them.  KK's mother contacted the police, and Fitzgerald was arrested.

The State charged Fitzgerald with (1) second degree child rape of MC, (2) second degree rape due to the victim's inability to consent of MC, (3) third degree child rape of RC, and (4) third degree child molestation of KK.  In the information, the State included a special allegation under RCW 9.94A.836 that the crimes were predatory.  The State also alleged a sentencing aggravator under RCW 9.94A.535(2)(c) (the free crimes aggravator) because Fitzgerald had

---

[1] Fitzgerald also argues that he received ineffective assistance of counsel at sentencing.  Because of our holding, we do not address this issue.

committed multiple current offenses and his high offender score would result in some of these offenses going unpunished.

*ER 404(b) Evidence*

Before trial, the State moved to permit the introduction of evidence of Fitzgerald's prior conviction of third degree child molestation of his oldest daughter (OF) under ER 404(b) as evidence of a common plan. Fitzgerald moved to exclude all evidence of his prior bad acts.

At the hearing on the ER 404(b) issue, the State argued that the prior conviction demonstrated a common plan. The State asserted that during the course of the prior offense, Fitzgerald had treated OF differently from his other seven children by spoiling her and buying her snacks, treats, and other things that he did not buy for his other children. The State argued that although the victims in this case were not his children, they were friends with his daughter KF and, as he did with OF, he treated them specially and purchased them things.

The State clarified that the prior offense involved Fitzgerald's biological daughter, and that the molestation started when OF was four and continued until she was almost a teenager. The State stated that Fitzgerald originally was charged with four or five counts regarding OF, but he ultimately pleaded guilty to just one count. The State asserted that Fitzgerald had given OF things like shoes and snacks and that he had given OF more things than he gave his other children. And the State argued that this was similar to the circumstances in this case, where Fitzgerald purchased the victims special goods and alcohol, spent more time with them than other children, and gave them special treatment.

The trial court ruled that the prior offense evidence was admissible as evidence of a common plan. The court found that there was "a marked similarity in the allegations of the approach to this, as far as a common scheme or plan." Rep. of Proc. (RP) at 54. And the court

found that the probative value outweighed the possible prejudice, especially because a limiting instruction would be given.

*Trial*

At trial, MC testified consistently with the facts set out above. She testified that she was 13 when the incidents occurred, that she was best friends with KF, and that she considered Fitzgerald to be a father figure. She testified about Fitzgerald purchasing the girls alcohol and snacks and letting them drive his vehicle. MC testified that on one occasion she had fallen asleep in a shed on Fitzgerald's mother's property after becoming intoxicated and that she awoke to find Fitzgerald on top of her with his fingers inside her vagina.

RC, who was 14 at the time of the incident, also testified consistently with the facts set out above about Fitzgerald purchasing the girls alcohol and snacks. She testified that Fitzgerald had engaged in oral/vaginal contact with her against her will when they were alone in his vehicle.

KK, who was 14 at the time of the incident, also testified consistently with the facts set out above about Fitzgerald purchasing the girls alcohol and snacks and letting them drive his vehicle. In addition, she testified that Fitzgerald had placed his hand high up on her inner thigh when she was driving his car.

The State introduced the evidence of Fitzgerald's prior conviction through Fitzgerald's former wife's testimony. She testified that she had observed other children in Fitzgerald's vehicle when he was dropping KF off at her house in the summer of 2021 and that she was concerned about this because Fitzgerald previously had been convicted of molesting their daughter OF.

Fitzgerald's former wife further testified that the abuse of OF occurred from the time that OF was 4 years old until she reported the abuse when she was 14 years old. During the period in which the abuse was taking place, Fitzgerald treated OF differently than the other children by taking her on special trips to the store to get treats or candy and buying her things that they usually would not buy the other children.

Fitzgerald's daughter KF testified for the defense. She also testified that around the time the girls had reported the inappropriate contact, RC had gotten angry with her because she had promised to take RC to a rodeo but she was unable to take her. KF also testified that MC was mad at her because they had an argument and because of the situation with RC.

Fitzgerald testified in his defense. He denied sexually assaulting any of the girls. Although he admitted that he would sometimes let the girls drive his vehicle and that he would purchase things for them, he asserted that he did this with all of the children he was around. And he claimed that the alcohol he purchased was for himself and other adults and asserted that he never handed any of the juveniles an alcoholic drink.

After the parties rested, the trial court gave the jury the following limiting instruction:

> You may have heard evidence of the existence of prior misconduct by the defendant regarding [OF]. Such evidence may only be considered by you to the extent you find it relevant to issues of acting pursuant to a common scheme or plan. It is not to be considered by you for any other purpose.

Clerk's Papers at 96.

*Verdict and Sentence*

The jury found Fitzgerald guilty of second degree child rape of MC, second degree rape due to the victim's inability to consent of MC, and third degree child rape of RC. The jury found him not guilty of attempted third degree child molestation of KK. The jury also found by special verdict that Fitzgerald established or promoted a relationship with the victim before the offense

and that the victimization of the victim was a significant reason he established or promoted the relationship.

At sentencing, the State asked the court to impose concurrent 194 month sentences for the second degree rape convictions, to run consecutively to a 60 month sentence for third degree rape. The trial court commented on the highly concerning nature of the crimes in light of Fitzgerald's prior conviction and the impact the crimes would have on the victims. The court stated,

> In this case, I think the testimony -- as I recall the testimony, there was definitely predatory behaviors. *And because of that*, I am going to sentence you in Count I [the second degree child rape] to the 194 months; Count II [the second degree rape], 194 months. Those will run concurrent. And Count III, 60 months. And I'm going to run that consecutive, for a total of . . . 254 months.

RP at 331-32 (emphasis added).

In the judgment and sentence, the trial court found the second degree child rape and the second degree rape to be same criminal conduct and calculated the offender scores as 6 points for each offense. Based on these offender scores, the standard sentencing ranges were 146 to 194 months for the second degree child rape and second degree rape and 46 to 60 months for the third degree child rape.

The trial court imposed indeterminate sentences on the two second degree child rape convictions with minimum terms of 194 months and maximum terms of life. The court ran these sentences concurrently. The court also imposed a sentence of 60 months on the third degree child rape, but it ran this sentence consecutive to the indeterminate sentences.

Despite imposing the consecutive sentence, the trial court did not complete the section of the judgment and sentence regarding imposition of an exceptional sentence. And the court did not set out any substantial and compelling reasons justifying an exceptional sentence.

Fitzgerald appeals his convictions and his sentence.

ANALYSIS

A.      ADMISSION OF COMMON PLAN EVIDENCE

Fitzgerald argues that the trial court erred by admitting evidence of his prior conviction as evidence of a common plan because the State failed to show that the prior and current offenses were markedly similar acts against similar victims under similar circumstances.  We disagree.

1.    ER 404(b) Framework

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  However, this evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  ER 404(b).  The proponent of the evidence bears the burden of demonstrating its proper purpose.  *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).

Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect.  *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).  The court must complete this analysis on the record.  *Id.*  And if evidence of a defendant's prior bad acts is admissible for a proper purpose, the defendant is entitled to an appropriate limiting instruction.  *Gresham*, 173 Wn.2d at 423.

We must read ER 404(b) together with ER 403 when analyzing whether the prejudice unfairly outweighs the probative value of the evidence.  *Gunderson*, 181 Wn.2d at 923.

> Even when ER 404(b) evidence is admitted for a proper purpose and is relevant to a material issue in the case, the trial court must still weigh the probative value

against its prejudicial effect. Evidence of prior misconduct is likely to be highly prejudicial, and should be admitted only for a proper purpose and then only when its probative value clearly outweighs its prejudicial effect.

*State v. Lough*, 125 Wn.2d 847, 862, 889 P.2d 487 (1995).

We review the trial court's decision to admit evidence under ER 404(b) for abuse of discretion. *Gunderson*, 181 Wn.2d at 922. The abuse of discretion standard applies both to the determination of relevancy and the weighing of probative value and prejudicial effect. *Gresham*, 173 Wn.2d at 422. The court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Gunderson*, 181 Wn.2d at 922.

2.    Legal Principles

One accepted "other purpose" under ER 404(b) is to show the existence of a common plan, where the defendant " 'devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.' " *Gresham¸*173 Wn.2d at 421-22 (quoting *Lough*, 125 Wn.2d at 854-55). "Evidence of . . . [a] common scheme or plan is admissible because it is not an effort to prove the *character* of the defendant. Instead, it is offered to show that the defendant has developed a plan and has again put that particular plan into action." *Gresham*, 173 Wn.2d at 422.

To establish a common plan, the State must show that the defendant committed " 'markedly similar acts of misconduct against similar victims under similar circumstances.' " *State v. DeVincentis*, 150 Wn.2d 11, 19, 74 P.3d 119 (2003) (quoting *Lough*, 125 Wn.2d at 856). The prior misconduct and the charged crime must have such common features that the acts naturally can be explained as individual manifestations of a general plan. *Id*. Similarity of results is not sufficient, and to be admissible evidence of prior child sexual abuse must show more than a general plan to molest children. *Gresham*, 173 Wn.2d at 422; *State v. Slocum*, 183 Wn. App. 438, 453-54, 333 P.3d 541 (2014). But "the commonality need not be 'a unique

method of committing the crime.' " *Gresham*, 173 Wn.2d at 422 (quoting *DeVincentis*, 150 Wn.2d at 19-21). Instead, whether a common plan exists focuses on "the *similarity* between the prior acts and the charged crime." *DeVincentis*, 150 Wn.2d at 19.

Washington courts have held in several cases under various factual scenarios that testimonial evidence of prior child sexual abuse committed by a defendant that is similar to the charged sexual abuse is admissible for the purpose of showing a common plan. *E.g., Gresham*, 173 Wn.2d at 421-22; *DeVincentis*, 150 Wn.2d at 22-24; *State v. Kennealy*, 151 Wn. App. 861, 887-89, 214 P.3d 200 (2009); *State v. Sexmith*, 138 Wn. App. 497, 505, 157 P.3d 901 (2007); *State v. Baker*, 89 Wn. App. 726, 733, 950 P.2d 486 (1997); *State v. Krause*, 82 Wn. App. 688, 697, 919 P.2d 123 (1996). "Conduct is sufficiently similar when the similarity indicates design, not merely coincidence." *Baker*, 89 Wn. App. at 733.

3. Common Plan

Fitzgerald argues that the State failed to establish that the prior and current acts were similar acts of misconduct because it failed to present any evidence relating to the circumstances of the prior crime and failed to establish markedly similar acts of misconduct. He contends that the State only established a similarity of result.

Although the State did not present any evidence regarding the exact nature of the illegal acts Fitzgerald engaged in with OF, the State presented evidence that Fitzgerald engaged in sexual activities with OF until she was 14. And during this time, he gave OF special treatment. This is markedly similar to the circumstances in the current offenses, where the alleged victims were 13 and 14 and Fitzgerald gave them special treatment by buying them treats and alcohol and letting them drive his vehicle. The similarity is that Fitzgerald used special treatment to groom the teenaged victims for sexual assault.

Fitzgerald makes several arguments against admissibility. First, he argues that the State failed to establish that the prior and current acts were similar because the current victims were not related to him and were older than OF. Although there were some dissimilarities between OF and the current victims because they were not related to Fitzgerald and the abuse did not begin until the victims were 13 and 14, there also were substantial similarities. Even though the current victims were not his children, Fitzgerald obtained access to them because they were friends with his daughter and he had built a relationship of trust with the current victims to the degree at least one of his victims considered him to be a father figure. Despite the absence of a biological connection, in both cases Fitzgerald victimized children with whom he had fostered a personal relationship. And although the inappropriate contact did not start when the current victims were much younger and did not continue over an extended period of time, the sexual assaults still were within the age range during which Fitzgerald abused OF.

Second, Fitzgerald argues that the State's evidence of similar circumstances was not sufficient to establish a common plan because there was no evidence that he purchased alcohol for OF and that even though he also purchased things for KF, there was no evidence he engaged in misconduct with KF. But the circumstances of the offenses need not be identical; they need only be sufficiently similar to establish a general plan. *See Gresham*, 173 Wn.2d at 422. In both cases Fitzgerald provided the victims with special treatment and purchasing gifts that they wanted, the fact these gifts might have differed because of the age and preferences of the particular victims does not mean that the circumstances were too distinct to establish a common plan. The overarching circumstance was that Fitzgerald singled out his victims and purchased them gifts as a way of forming a bond with the child.

Third, Fitzgerald argues that there was no evidence that OF's abuse was connected to any gifts from him. He contends that unlike in *Kennealy*, where the fact the defendant provided his victims with treats was related to the crimes, his former wife testified that she did not think that Fitzgerald was buying OF things for the purpose of molesting the child. But Fitzgerald mischaracterizes his former wife's testimony. She did not testify that she did not think Fitzgerald was buying OF things for the purposes of molesting OF generally. Instead, she testified that at the time Fitzgerald was molesting the child and she was still unaware of the molestation, she thought that he was just buying the child things to spoil her and did not suspect that he was favoring OF for a more sinister reason. The fact that Fitzgerald was buying OF things to facilitate the abuse may not have been expressly established, but it is a reasonable inference.

In fact, contrary to Fitzgerald's argument, this case is very similar to *Kennealy*. In *Kennealy* this court concluded that the defendant had used treats to gain the trust of his victims so he could have access to them. 151 Wn. App. at 889. Fitzgerald's pattern of giving his victims special treatment could also be reasonably construed as a method he used to gain the victims' trust and facilitate the abuse.

Fourth, Fitzgerald notes that he did not engage in misconduct with KF, which weighs against finding similar circumstances. But even if KF was not a targeted victim, treating her the same as her friends likely increased his access to KF's friends and helped create the circumstances in which the crimes could occur.

The similarities discussed above showed that the current victims were within the age range of his prior victim and that Fitzgerald's plan included identifying victims to whom he gave special treatment  This is sufficient to show that the prior act and the current acts were similar

enough to find a common plan. Accordingly, we conclude that the trial court did not abuse its discretion in ruling that prior offense was evidence of a common plan.

4. Probative Value vs. Prejudicial Effect

Fitzgerald argues that the trial court erred in determining that the prejudicial effect of the evidence about the prior offense outweighed the probative value of that evidence. We disagree.

Evidence of a defendant's prior sexual misconduct, standing alone, is probative only to show propensity to commit such acts. However, when those prior acts reflect a common plan, such evidence becomes highly probative. "[E]vidence that a charged crime was carried out in a manner devised by the defendant and used by him more than once has a distinct and additional probative value [other than showing propensity] that justifies its admission." *Slocum*, 183 Wn. App. at 456. This probative value is enhanced in cases involving child sexual abuse, where the need for supporting evidence is great because, as is the case here, corroborating evidence of the criminal acts generally is unavailable. *See DeVincentis*, 150 Wn.2d at 23; *Kennealy*, 151 Wn. App. at 890.

Here there is no question that the prior acts evidence was prejudicial. But that prejudice was limited to some extent by the trial court's limiting instruction. And the probative value of the evidence of a common scheme or plan was high because it put into context Fitzgerald's behavior, which might otherwise appear to be facially innocuous. Taking this all into consideration, we conclude that the trial court did not abuse its discretion when it ruled that the probative value of the evidence outweighed its prejudice.

In summary, we hold that the trial court did not err in admitting evidence of Fitzgerald's prior conviction of third degree child molestation.

B. DOUBLE JEOPARDY

Fitzgerald argues, and the State concedes, that the trial court violated the prohibition against double jeopardy when it sentenced him on both the second degree child rape and the second degree rape due to the victim's inability to consent because the two convictions were based on the same act of intercourse with the same victim. Both parties agree that remand for the trial court to determine which conviction to vacate is required. We agree.

In *State v. Hughes*, the Supreme Court held that convictions for second degree child rape and second degree rape due to the victim's inability to consent arising from one act of sexual intercourse with the same victim violates the prohibition against double jeopardy. 166 Wn.2d 675, 683-86, 212 P.3d 558 (2009). The court further held that because both crimes were class A felonies with the same seriousness levels and sentencing ranges, remand was necessary to allow the trial court to determine which offense was the lesser offense that must be vacated. *Id*. at 686 n.13. The same circumstances exist here – the two convictions were based on a single sexual act with the same victim, and the two offenses are both class A felonies with the same seriousness levels and sentencing ranges.

Accordingly, we accept the State's concession that the two convictions violate double jeopardy. We remand to the trial court to determine which conviction to vacate. And because vacating a conviction will change Fitzgerald's offender score, we remand for resentencing.

C.    CONSECUTIVE SENTENCE

Fitzgerald argues that the trial court erred when it imposed the third degree rape sentence consecutively to the other rape sentences. We agree.

We review the trial court's authority to impose an exceptional sentence de novo. *State v. France*, 176 Wn. App. 463, 469, 308 P.3d 812 (2013).

Subject to certain exceptions that do not apply here, RCW 9.94A.589 provides that when a defendant is sentenced for two or more current offenses, those sentences are to be served concurrently unless the trial court imposes an exceptional sentence under RCW 9.94A.535.[2] RCW 9.94A.589(1)(a)-(d). "A departure from the standards in RCW 9.94A.589(1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in [RCW 9.94A.535]." RCW 9.94A.535.

Under RCW 9.94A.535(3), the trial court may impose an aggravated exceptional sentence based on a jury's consideration only if the jury finds one or more aggravating circumstances from an exclusive list.

There is no question that the trial court imposed an exceptional sentence when it ran the third degree rape sentence consecutively to the other sentences. RCW 9.94A.535; RCW 9.94A.589(1). The State argues, and the trial court's oral ruling demonstrates, that the court imposed the consecutive sentence because Fitzgerald engaged in predatory behavior. Under RCW 9.94A.836, in a child rape case the State may file a special allegation that the offense was predatory. The State did so here. The definition of "predatory" includes that "the perpetrator established or promoted a relationship with the victim prior to the offense and the victimization of the victim was a significant reason the perpetrator established or promoted the relationship." RCW 9.94A.030(38). The jury made that finding in this case.

But the predatory nature of the offense is not one of the aggravating circumstances in the exclusive list specifically enumerated in RCW 9.94A.535(3). And RCW 9.94A.836 does not authorize the court to impose an exceptional aggravated sentence.

---

[2] This statute was amended in 2025, but the amendments are not relevant to this appeal. Therefore, we cite to the current version of the statute.

14

We hold that the trial court erred when it imposed an exceptional sentence based on the predatory offense finding.[3] Accordingly, we vacate the consecutive sentence and remand for the trial court to reimpose the sentence on the third degree child rape conviction as a concurrently with the second degree rape sentence.

D.    SAG CLAIMS

In his SAG, Fitzgerald asserts that the investigating officer knowingly made false statements and omissions in his probable cause statement, his incident report, and his testimony. But these claims all rely on factual assertions that are not in the record before us or relate to credibility and weight determinations that we will not review. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (rejecting SAG issues not supported by the record); *State v. Bergstrom*, 199 Wn.2d 23, 41, 502 P.3d 837 (2022) (appellate courts defer to the trier of fact's resolution of conflicting testimony, witness credibility, and the persuasiveness of the evidence). Therefore, we decline to consider these claims

Fitzgerald also appears to assert that the trial court erred in permitting a juror to be seated on the jury despite potential conflicts or biases. Fitzgerald may also be asserting that he received ineffective assistance of counsel because defense counsel did not move to excuse the juror on these grounds. However, our record does not include a transcript from jury selection, so these claims also rely on matters outside the record. As a result, we cannot consider this claim on

---

[3] The State also argues that the trial court could have imposed the exceptional sentence under the free crimes aggravator, RCW 9.94A.535(2)(c), which applies when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." But the free crimes aggravator cannot apply here because Fitzgerald's offender scores were only 6 points, and each current offense that was not considered to be same criminal conduct contributed to that score.

direct appeal. *Alvarado*, 164 Wn.2d at 569. This claim is more properly raised in a personal restraint petition. *Id.*

CONCLUSION

We affirm Fitzgerald's convictions, but we remand for the trial court to determine which second degree rape conviction must be vacated on double jeopardy grounds and for resentencing, and to reimpose the sentence on the third degree child rape conviction as a concurrent sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

VELJACIC, A.C.J.

PRICE, J.