# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                       Respondent,

        v.

JEFFREY A. COOK,

                       Appellant.

_____

In the Matter of the Personal Restraint
Petition of:

JEFFREY A. COOK,

                     Petitioner.

DIVISION ONE

No. 81567-9-I (consolidated with
No. 82130-0-I)

UNPUBLISHED OPINION

DWYER, J. — Jeffrey Cook appeals from his conviction of child molestation in the first degree. On appeal, he contends that the trial court erred by admitting evidence of two prior acts in violation of ER 404(b). We agree. Because the prior acts were not sufficiently similar to the facts of the charged offense, the exceptions to the general rule of inadmissibility are not applicable. Rather, the evidence of these acts was relevant only to improperly demonstrate a propensity to commit such acts. Because there is a reasonable probability that, but for the admission of the prior act evidence, the outcome of the trial would have been different, the errors are not harmless. Accordingly, we reverse Cook's conviction and remand for a new trial.

I

In October 2018, the State charged Cook with one count of child molestation in the first degree based on an incident that occurred at the 99 Ranch Market in Edmonds. The State alleged that Cook had briefly touched the vagina of L.S., a 10-year-old girl, over her clothing as he passed her in an aisle of the market. During pretrial motions, the State sought to admit evidence of two prior acts—a 2016 incident during which Cook allegedly molested a girl briefly over her clothing in a Barnes & Noble bookstore in Georgia, and a 2017 incident in which Cook made two sexually-oriented statements to a young girl in a retail store. To establish that these acts took place, the State submitted to the trial court the police reports associated with these incidents.

According to the police report for the 2016 incident, a security guard at the Barnes & Noble bookstore witnessed Cook enter the children's section of the store, briefly touch a young Asian girl "on her back side and her buttocks," and then run out of the store. During the pretrial hearing in this case, the security guard testified that Cook touched the girl "all over her body, on her backside, [and] in between her legs." He indicated that the girl was eight or nine years old. The police officer who responded to the scene testified that "[t]he victim was an Asian female" and that he "believe[d] she was five years old."

The 2017 incident occurred at the Modern Trading Company in Seattle. The police report indicated that Cook made two sexually-oriented statements toward a female child. First, while the girl was located "in the middle of the store," Cook said "something in reference to 'squeezing something on her body.'"

2

After the girl went "to an employee only area in the back" of the store, which was "separated by a cloth curtain," Cook "came to the curtain and spoke to her directly while looking at her." Cook told the child that he could "take [her] panties off" and "play with [her] pussy." He then exited the store. Based on this incident, Cook subsequently pleaded guilty to one count of communicating with a minor for immoral purposes.

The State asserted that the evidence of these prior acts should be admitted to show identity, common scheme or plan, purpose of sexual gratification, intent, and absence of mistake or accident. The State repeatedly iterated that, like L.S., both of the girls targeted in the 2016 and 2017 incidents were Asian. The State thus asserted that these prior acts demonstrated that Cook had a plan to molest Asian girls in public places. Defense counsel objected to the admission of evidence of the prior acts, arguing that they were relevant only for the improper purpose of demonstrating a propensity to commit child molestation.

The trial court ruled that evidence of the prior acts was admissible to demonstrate a common scheme or plan, an absence of mistake or accident, and intent—namely, that Cook engaged in the act charged for the purpose of sexual gratification. The prior acts evidence was admissible to demonstrate a common scheme or plan, the trial court ruled, due to the purported similarities between those acts and the conduct charged herein, specifically, that (1) Cook engaged in the acts in "an open retail shopping establishment," (2) Cook "targeted a girl," (3) the child targeted was or appeared to be "about 9 to 12 years old," (4) the victim

"appeared to be or was Asian," (5) Cook approached the child "from either behind or from some position from which they would initially not see or notice" him, (6) the child was not accompanied by a parent when the act occurred, (7) the act was very brief, (8) the act "happened in an open store where there were either other people around or it was likely that another person might see this," and (9) Cook immediately departed the store after engaging in each act.  The trial judge reasoned that at issue in this case would be whether the alleged touching actually occurred, precisely where on L.S.'s body it occurred, and whether L.S. was mistaken regarding where she was touched.[1]  Thus, the court additionally ruled that the evidence was admissible to rebut a defense of mistake or accident and to demonstrate the purpose of sexual gratification.

The case proceeded to a jury trial.  At trial, the State focused on the 2016 and 2017 incidents.  In opening statement, the prosecutor informed the jurors that they would "hear from two witnesses involving [the prior acts]," which would answer "any open question" regarding Cook's purpose in engaging in the charged conduct.  In describing the prior acts, the State emphasized that, like L.S., each of the targeted girls was Asian.  As its first two witnesses, the State called the girl to whom Cook made sexual remarks in the 2017 incident and the security guard who witnessed the 2016 incident.  In closing argument and in rebuttal, the State made numerous references to the prior acts, again emphasizing that each of the girls, like L.S., was Asian.

---

[1] This reasoning suggests that the trial court erroneously believed that it was L.S.'s mistake—not Cook's—that was at issue in evaluating whether the prior act evidence was admissible to rebut a defense of mistake or accident.  To clarify, we note that this exception to the general rule of inadmissibility refers to mistaken conduct on the part of the defendant.

The jury entered a verdict finding Cook guilty of child molestation in the first degree. Cook thereafter filed a motion for a new trial, asserting that the trial court erroneously admitted evidence concerning the two prior acts. During the hearing on Cook's motion, the State, for the first time, informed the trial court that Cook had two prior convictions in Georgia for child molestation. These convictions, the State revealed, were premised on acts perpetrated against "a white female." The trial court denied Cook's motion for a new trial.

At sentencing, the trial court included the two Georgia convictions in calculating Cook's offender score.[2] The court entered judgment against Cook. Based on his offender score, Cook was sentenced to a minimum of 10 years of incarceration and a maximum of life in prison.

Cook appealed from the judgment and sentence. He additionally filed a personal restraint petition, which was consolidated with the direct appeal.

II

We review de novo the interpretation of an evidentiary rule. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). "Once the rule is correctly interpreted," we review the trial court's decision to admit or exclude evidence for an abuse of discretion. DeVincentis, 150 Wn.2d at 17. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Taylor, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019).

---

[2] The Barnes & Noble incident did not result in a conviction and was, therefore, not sought to be included in his offender score.

5

"The purpose of the rules of evidence is to secure fairness and to ensure that truth is justly determined." State v. Wade, 98 Wn. App. 328, 333, 989 P.2d 576 (1999). "To that end, ER 404(b) forbids evidence of prior acts that tend to prove a defendant's propensity to commit a crime, but allows its admission for other limited purposes." Wade, 98 Wn. App. at 333. The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b).

"A trial court must always begin with the presumption that evidence of prior bad acts is inadmissible." DeVincentis, 150 Wn.2d at 17. "The State must meet a substantial burden when attempting to bring in evidence of prior bad acts under one of the exceptions" to the general rule prohibiting the admission of such evidence. DeVincentis, 150 Wn.2d at 17. In determining the admissibility of evidence of prior bad acts,

> the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). "In doubtful cases, the evidence should be excluded." Vy Thang, 145 Wn.2d at 642.

Furthermore, courts performing this analysis must be mindful that

> the question to be answered in applying ER 404(b) is not whether a defendant's prior bad acts are logically relevant—they are. Evidence that a criminal defendant is a "criminal type" is relevant.

6

> But ER 404(b) reflects the long-standing policy of Anglo-American law to exclude most character evidence because "it is said to weigh too much with the jury and to so overpersuade them. . . .  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."  Michelson v. United States, 335 U.S. 469, 476, 69 S. Ct. 213, 93 L. Ed. 168 (1948).

State v. Slocum, 183 Wn. App. 438, 456, 333 P.3d 541 (2014) (alteration in original).

When evidence is erroneously admitted in violation of ER 404(b), "we apply the nonconstitutional harmless error standard."  State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014).  "This requires us to decide whether 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"  Gunderson, 181 Wn.2d at 926 (internal quotation marks omitted) (quoting State v. Gresham, 173 Wn.2d 405, 433, 269 P.3d 207 (2012)).  "[W]here there is a risk of prejudice and 'no way to know what value the jury placed upon the improperly admitted evidence, a new trial is necessary.'"  Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 673, 230 P.3d 583 (2010) (quoting Thomas v. French, 99 Wn.2d 95, 105, 659 P.2d 1097 (1983)); accord State v. Murphy, 7 Wn. App. 505, 508-10, 500 P.2d 1276 (1972).

III

Cook first contends that evidence of the 2016 and 2017 incidents was not admissible to demonstrate a common scheme or plan.  We agree.  Because the prior acts are not sufficiently similar to the facts of the charged offense, this exception to the general rule of inadmissibility is inapplicable.  Moreover, due to the State's withholding from the trial court of pertinent information regarding two

7

of Cook's prior offenses, the trial court erroneously overvalued the probative effect of the proffered testimony. Accordingly, the trial court erred in admitting the evidence of the prior acts to demonstrate a common scheme or plan.

Otherwise inadmissible evidence may be admitted to prove a common scheme or plan "when an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes." State v. Lough, 125 Wn.2d 847, 855, 889 P.2d 487 (1995). Admission of evidence of such a plan "requires substantial similarity between the prior bad acts and the charged crime." DeVincentis, 150 Wn.2d at 21. "Sufficient similarity is reached only when the trial court determines that the 'various acts are naturally to be explained as caused by a general plan.'" DeVincentis, 150 Wn.2d at 21 (quoting Lough, 125 Wn.2d at 860). Thus, "a common plan or scheme may be established by evidence that the defendant 'committed markedly similar acts of misconduct against similar victims under similar circumstances.'" DeVincentis, 150 Wn.2d at 27 (quoting Lough, 125 Wn.2d at 852). "Similarity of results is insufficient, and the evidence must show more than a general 'plan' to molest children." State v. Wilson, 1 Wn. App. 2d 73, 81, 404 P.3d 76 (2017). Moreover, "'caution is called for in application of the common scheme or plan exception.'" DeVincentis, 150 Wn.2d at 18 (quoting State v. DeVincentis, 112 Wn. App. 152, 159, 47 P.3d 606 (2002)).

We first consider whether the 2017 incident—in which Cook made sexually-oriented statements to a young girl in a retail store—bears sufficient similarity to the facts of the charged offense such that evidence of the incident could be admitted to demonstrate a common scheme or plan. We conclude that

it does not. Directly applicable here, we held in <u>Wilson</u> that evidence of a prior act involving a sexually-oriented statement made to a child was not admissible to demonstrate a common scheme or plan in a trial for the charged offense of rape of a child. 1 Wn. App. 2d at 80-82. There, the defendant was alleged to have penetrated the vagina of his four-year-old granddaughter, B.E., with both his fingers and his penis on two separate occasions. <u>Wilson</u>, 1 Wn. App. 2d at 77-78. The State sought to admit evidence that the defendant had, on a prior occasion, told the child's 11- or 12-year-old cousin, S.H., "that she should not 'wear [a bathing suit] around [him] because it gets—[him] so excited.'" <u>Wilson</u>, 1 Wn. App. 2d at 80 (second and third alterations in original). The trial court ruled that this evidence was admissible under the common scheme or plan exception to ER 404(b). <u>Wilson</u>, 1 Wn. App. 2d at 81.

On appeal, we held that the sexually-oriented statement was not sufficiently similar to the charged offense to be admissible pursuant to the rule. <u>Wilson</u>, 1 Wn. App. 2d at 80-82. We explained:

> The incidents described by B.E. and S.H. did not share "markedly and substantially similar" features that can naturally be explained as individual manifestations of a general plan. *B.E. reported recurring incidents of sexual abuse. S.H. reported an isolated, sexually oriented remark.* There was a significant difference in the victims' ages when the incidents occurred. The evidence was similar only in the respect that it tended to show [the defendant]'s sexual attraction to minors.

<u>Wilson</u>, 1 Wn. App. 2d at 81-82 (emphasis added). Similarly, here, the features of the 2017 incident, which involved sexually-oriented statements, are not "markedly and substantially similar" to the charged conduct of touching a child's

9

vagina through her clothes. Rather, as in Wilson, the evidence here is similar only in that it tends to demonstrate a sexual attraction to minors.

Moreover, because the State was not forthcoming with the trial court regarding the facts underlying all of Cook's prior convictions, the trial court judge was under the mistaken impression that all of Cook's prior victims "appeared to be or [were] Asian." As explained above, during the pretrial hearing, the State sought to admit evidence only of the 2016 and 2017 incidents, in which the presumed race of the victims fit the State's theory that Cook targets "Asian" children. Only after obtaining the ruling that it wanted—and trying the case on the theory allowed—did the State disclose to the trial court that it had not been forthcoming with regard to Cook's alleged exclusive predilection to offend against Asian girls. Specifically, the State belatedly disclosed that Cook had two prior convictions of child molestation committed against a white child.[3] The State explained that the two convictions did "not [involve] a young Asian female, it was a white female . . . which did not meet the very specific common plan or scheme that the State had proffered to the Court." This complete history tends to establish that Cook has a propensity to offend against young girls—not a specific predilection or fetishistic attraction to Asian girls.

---

[3] Defense counsel was put in an untenable position by the State's proffer of the misleading theory that Cook exclusively targets children presumed to be Asian. Although defense counsel at trial could have disclosed the existence of the prior convictions against a white victim to rebut the State's emphasis on the race of the targeted children, doing so would have placed before the jury highly prejudicial evidence that was otherwise inadmissible as propensity evidence. This essentially guaranteed that, either way, the trial had to proceed in a manner inconsistent with the intentions of the adopters of ER 404(b).

In ruling that evidence of the prior acts was admissible to show a common scheme or plan, the trial court relied heavily on the State's misleading theory that Cook targets children who are presumed to be Asian. However, in light of the information initially withheld by the State, Cook's history does not demonstrate a plan to target children based on their presumed race.[4] Given the interlocutory nature of the trial court's admissibility ruling, the court could have corrected, prior to entering judgment, the procedural irregularity caused by the State's withholding of pertinent information. However, the trial court declined to do so.

Nor do other factors relied on by the trial court in its ruling demonstrate a common scheme or plan such that evidence of the 2016 and 2017 incidents could be properly admitted. For instance, the fact that Cook targeted girls in each instance does not establish "a plan [used] repeatedly to perpetrate separate but very similar crimes," Lough, 125 Wn.2d at 855, but, instead, tends to show simply that Cook is heterosexual. Moreover, the trial court's finding that Cook approached each child "from either behind or from some position from which they would initially not see or notice" him, is not supported by the record. With regard to the 2017 incident, the police report instead indicates that Cook "spoke directly to [the child] while looking at her." Finally, that Cook approached the children when no parent was present simply indicates that Cook seized an opportunity to engage in the acts when he would not be observed doing so. This does not demonstrate a plan. See Slocum, 183 Wn. App. at 455 ("The fact that a

---

[4] We do not hold that, had Cook's history actually demonstrated that he committed offenses only against children of a certain presumed race, the evidence of prior acts would be admissible to show a common scheme or plan on that basis. That is not the case before us.

defendant molests victims when no one is close enough to see what is going on is too unlike a strategy for isolating a victim; it is not evidence of a plan.").

In admitting evidence of the 2016 incident—in which Cook was alleged to have briefly touched a young girl "on her backside, [and] in between her legs" at a Barnes & Noble store—the trial court again erred in concluding that the prior acts and the charged offense were sufficiently similar to demonstrate a common scheme or plan.[5]  Again, the circumstances of the prior act and the charged offense are not sufficiently similar to demonstrate that, in engaging in these acts, Cook was implementing a previously devised plan.  Rather, as in Slocum, 183 Wn. App. 438, the evidence shows that the conduct was merely opportunistic.  There, the defendant was charged with child molestation and child rape of his granddaughter, who alleged that he had touched her breasts and vagina while she sat on his lap in a recliner.  Slocum, 183 Wn. App. at 444.  The trial court admitted evidence of three prior acts in which the defendant was alleged to have (1) touched the vagina of the child's mother when the mother was a child and was sitting on the defendant's lap in a recliner, (2) touched the breasts of the child's mother when the mother was a child and was lying on the floor of their home watching television, and (3) touched the breasts of the child's aunt when the aunt was a child and the defendant was applying sunscreen to her body in the backyard of the house.  Slocum, 183 Wn. App. at 445-46.

---

[5] The trial court admitted the evidence—in this case, of the 2016 incident—on the basis that a common scheme or plan was demonstrated because the targeted children "appeared to be or [were] Asian," that each child was a girl, and that no parent was accompanying the child when the act occurred.  As discussed above, admission of prior act evidence on these bases was erroneous.

On appeal, Division Three of this court held that only evidence of the prior act that occurred while the defendant sat in a recliner was admissible as proof of a common scheme or plan. Slocum, 183 Wn. App. at 455. The court explained that there was "no evidence to suggest that the incidents in which [the defendant] was on the floor with [the child's] mother or putting sunscreen on [the child's] aunt were anything but opportunistic." Slocum, 183 Wn. App. at 455-56. Consistent with our subsequent holding in Wilson, 1 Wn. App. 2d at 81, the court rejected the State's argument "that variations in a defendant's molestation of earlier victims can be disregarded because the prior acts demonstrate a defendant's plan 'to molest children.'" Slocum, 183 Wn. App. at 453. Such a conclusion would, in child molestation cases, eviscerate "the categorical bar to propensity evidence expressed in ER 404(b)." Slocum, 183 Wn. App. at 453. Here, in contrast to the charged conduct, Cook was alleged in 2016 to have specifically entered an area of the bookstore designated for children and to have much more deliberately and extensively touched the targeted child. As in Slocum, the differences between that 2016 incident and the conduct charged herein indicate opportunism, not action in furtherance of a previously devised plan.

Finally, to be admitted to demonstrate a common scheme or plan, the evidence must show that the "'individual devise[d] a plan and *use[d] it repeatedly* to perpetrate separate but very similar crimes.'" Gresham, 173 Wn.2d at 422 (emphasis added) (quoting Lough, 125 Wn.2d 854-55); see also DeVincentis, 150 Wn.2d at 17-18 (where the issue is whether the crime occurred, "the

13

existence of a design to fulfill sexual compulsions evidenced by a *pattern of past behavior* is probative" (emphasis added)). As discussed above, evidence of the 2017 incident was improperly admitted to demonstrate a common scheme or plan. Thus, even were evidence of the 2016 incident otherwise properly admitted on this basis, it would constitute only one prior act. One prior molestation of a child does not evidence the repeated implementation of a common plan to perpetuate similar crimes.

The prior acts were not sufficiently similar to the conduct charged to demonstrate a common scheme or plan. The 2017 incident involved sexually-oriented statements made to a child, not child molestation. Moreover, due to the State's withholding of pertinent information regarding Cook's prior offenses, the trial court mistakenly believed that Cook exclusively targeted children who "appeared to be or [were] Asian." The remaining similarities between the prior acts admitted and the facts of the charged offense—that the acts were brief and occurred in a retail store, that the children were of similar ages, and that Cook quickly departed the stores after committing the acts—are insufficient to demonstrate that Cook acted pursuant to a devised plan. The trial court thus erred in admitting evidence of the prior acts based on this exception to the general rule of inadmissibility.

IV

Cook additionally contends that evidence of the 2016 and 2017 incidents was erroneously admitted to rebut a defense of mistake or accident and to demonstrate intent. Again, we agree. Prior acts are not admissible for this

purpose if the evidence merely indicates a predisposition toward committing such acts. Because only through an improper propensity inference could the prior acts demonstrate that Cook acted intentionally and for the purpose of sexual gratification, the evidence is inadmissible pursuant to ER 404(b). The trial court thus erred in admitting evidence of the prior acts pursuant to that exception.

Evidence of prior acts may be admissible to rebut a defense of accident or mistake. State v. Baker, 89 Wn. App. 726, 735, 950 P.2d 486 (1997). The rule permitting evidence to be admitted for this purpose is premised on "the doctrine of chances," which recognizes that

> "[a]t some point of recurrence, the *similar repeated acts* can no longer be viewed as coincidental. When the evidence reaches such a point, the recurrence of a similar unlawful act tends to negate accident, inadvertence, good faith, or other innocent mental states, and tends to establish by negative inference the presence of criminal intent."

Lough, 70 Wn. App. at 321-22 (emphasis added) (quoting Eric D. Lansverk, Comments, Admission of Evidence of Other Misconduct in Washington to Prove Intent or Absence of Mistake or Accident: The Logical Inconsistencies of Evidence Rule 404(b), 61 WASH. L. REV. 1213, 1225-26 (1986)). Thus, for evidence to be admissible on this basis, the similarity between the prior act and the charged offense "must meet a threshold of noncoincidence." Baker, 89 Wn. App. at 735. In child molestation cases, prior acts may not be admitted to demonstrate the absence of mistake or accident if "the evidence would merely show [the defendant's] predisposition toward molesting children." State v. Sutherby, 165 Wn.2d 870, 886, 204 P.3d 916 (2009).

Similarly, evidence of prior acts proffered to demonstrate intent must be premised on "a logical theory, *other than propensity*, demonstrating how the prior acts connect to the intent required to commit the charged offense." Wade, 98 Wn. App. at 334. "Use of prior acts to prove intent is generally based on propensity when the only commonality between the prior acts and the charged act is the defendant. To use prior acts for a nonpropensity based theory, there must be some similarity among the facts of the acts themselves." Wade, 98 Wn. App. at 335. "That a prior act 'goes to intent' is not a 'magic [password]' whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in [its name]." Wade, 98 Wn. App. at 334 (alterations in original) (quoting State v. Saltarelli, 98 Wn.2d 358, 364, 655 P.2d 697 (1982)).

Here, the trial court reasoned that whether Cook's touching of L.S. was intentional and performed for the purpose of sexual gratification would be at issue in this case. Accordingly, the trial court ruled that the prior act evidence was admissible to rebut a defense of mistake and to demonstrate intent.[6] However, in order for evidence of a prior act to be properly admitted on this basis, there must be sufficient similarity between that act and the charged conduct. Wade, 98 Wn. App. at 335; Baker, 89 Wn. App. at 735. Otherwise, the prior act evidence is relevant only as promoting an improper propensity inference. Wade, 98 Wn. App. at 335.

---

[6] Intent is relevant to the crime of child molestation "because it is necessary to prove the element of sexual contact." State v. Stevens, 158 Wn.2d 304, 310, 143 P.3d 817 (2006).

16

In an opinion we regard as well-reasoned, Division Two of this court considered the admission of prior act evidence to prove intent where the defendant was charged with possession with intent to deliver cocaine after dropping a baggie of drugs and running from a police officer. Wade, 98 Wn. App. at 332-34. There, the trial court admitted evidence of the defendant's prior sales of cocaine for the purpose of demonstrating that Wade intended to sell the cocaine in his possession. Wade, 98 Wn. App. at 333. On appeal, the court held that the prior act evidence was inadmissible pursuant to ER 404(b) because it demonstrated intent only on an inference of the defendant's propensity to commit such crimes. Wade, 98 Wn. App. at 336 ("Using Wade's prior bad acts to prove current criminal intent, however, is tantamount to inviting the following inference: Because Wade had the same intent to distribute drugs previously, he must therefore possess the same intent now.").

Here, as explained above, the only similarities between the prior acts and the charged conduct are that the acts were brief and occurred in a retail store, that the children were of similar ages, and that Cook quickly departed the stores after committing the acts. Moreover, again, due to the State's misleading of the trial court concerning the underlying facts of all of Cook's prior convictions, the trial court mistakenly believed that Cook targeted only Asian victims. Given the meagerness of the similarities between the 2016 and 2017 incidents and the charged conduct, the relevance of these prior acts to demonstrate intent is predicated solely on a propensity inference. Wade, 98 Wn. App. at 335; see also Sutherby, 165 Wn.2d at 886 (evidence admitted to show intent that "would

merely show [the defendant's] predisposition toward molesting children" is "subject to exclusion under ER 404(b)"). To be viewed otherwise, "the similarity of the acts must meet a threshold of noncoincidence." Baker, 89 Wn. App. at 735. This evidence does not. Accordingly, the evidence was inadmissible pursuant to ER 404(b).

We conclude that it is reasonably probable that, had the prior act evidence not been admitted, the outcome of the trial would have been different. See Gunderson, 181 Wn.2d at 926. Our conclusion is based on both the heightened probability of prejudice where prior act evidence is admitted in sex offense cases,[7] as well as the State's extensive reliance at trial on its fabricated and erroneous theory that Cook exclusively and unusually targets Asian girls in committing such offenses.[8]

---

[7] See, e.g., State v. Gower, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014) ("[T]he potential for prejudice from admitting prior acts is 'at its highest' in sex offense cases." (internal quotation marks omitted) (quoting Gresham, 179 Wn.2d at 433)); DeVincentis, 150 Wn.2d at 24 (recognizing that "'prejudice [reaches] its loftiest peak'" in "'deciding the issue of guilt or innocence in sex cases'" (internal quotation marks omitted) (quoting Saltarelli, 98 Wn.2d at 364)).

[8] An inventory of the State's repeated iterations during opening and closing statements regarding the presumed race of the targeted children illustrates the extent to which the State relied on this flawed theory. For instance, during its opening statement, the State asserted that (1) "The 99 Ranch Market is an Asian grocery store. [J.L.'s sister], [J.L.], and [J.L.'s mother] are all of Asian descent"; (2) "The H Mart is also another Asian grocery store"; and (3) "In May of 2017, in the Chinatown area in Seattle, Washington, the defendant went into a store and followed a 12-year-old Asian female . . . into the store."

In its closing argument, the State asserted that (1) "[T]he H Mart is another Asian supermarket"; (2) The child during the 2017 incident "is a small, Asian female. You saw her testify before you. [J.L.] is a small, 10-year-old Asian female"; (3) "And the little Asian female between 8 and 9 years old who was playing at the Lego table that the defendant walked up to"; (4) "In each case, in each of those incidences, we have an Asian female"; (5) "You heard from [a child] that the store that the defendant—her dad's store is in Chinatown. You saw her. She is an Asian female"; (6) "And you heard from [the security guard] that when he ultimately was trying to talk to the mother after, there was a language barrier. He said he believed they were Chinese. The little girl was of Asian descent"; (7) "This isn't somebody bumping into a 10-year-old Asian female at an Asian grocery store. Okay?" (8) "And I would note, that's part of the M.O.: Small, Asian females. Okay?"

Accordingly, we reverse and remand for a new trial.[9]

_Dwyer, J._

I CONCUR:

_Chung, J._

---

[9] Our resolution of this claim of error renders moot the remainder of the issues presented in Cook's direct appeal. Thus, we do not address his additional claims. For the same reason, we dismiss as moot Cook's personal restraint petition.

<u>State v. Cook, No. 81567-9-I (consolidated with No. 82130-0-I)</u>

BOWMAN, J. (concurring) — A court cannot use out-of-state convictions in calculating a defendant's offender score if the foreign statute is broader than the analogous Washington statute. In his alternative appeal, Jeffrey Allen Cook argues he is entitled to resentencing because the trial court erroneously calculated his offender score based on two Georgia convictions for child molestation. The State concedes that one of these convictions is not comparable to the relevant Washington statute, child molestation in the third degree, and that the court should not have included it in Cook's offender score. Cook argues that neither Georgia conviction is comparable. Cook is correct. While I agree with the majority that we must reverse Cook's conviction and remand for a new trial because the trial court erroneously admitted prejudicial propensity evidence, I write separately in anticipation that this sentencing issue may recur.

ANALYSIS

The Sentencing Reform Act of 1981, chapter 9.94A RCW, creates a grid of standard sentencing ranges, calculated according to the seriousness of the crime and the defendant's offender score. <u>State v. Ford</u>, 137 Wn.2d 472, 479, 973 P.2d 452 (1999); <u>see</u> RCW 9.94A.505, .510, .520, .525. The offender score is the sum of the points accrued as a result of prior convictions. RCW 9.94A.525. "Out-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). We review the trial court's calculation of a defendant's

offender score de novo. State v. Olsen, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

In determining the comparability of out-of-state convictions, we first compare the elements of the out-of-state offense to the relevant Washington crime. Olsen, 180 Wn.2d at 472.

> If the foreign conviction is identical to or narrower than the Washington statute and thus contains all the most serious elements of the Washington statute, then the foreign conviction counts toward the offender score as if it were the Washington offense.

Id. at 472-73. But if the foreign statute is broader than the analogous Washington statute, we evaluate its factual comparability by determining "whether the defendant's conduct would have violated the comparable Washington statute." Id. at 473.

We consider "only those facts that were clearly charged and then clearly proved beyond a reasonable doubt to a jury or admitted by the defendant." Olsen, 180 Wn.2d at 476. "[T]he elements of the charged crime must remain the cornerstone of the comparison." State v. Morley, 134 Wn.2d 588, 606, 952 P.2d 167 (1998). This is because "[f]acts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial." Id. Indeed, the defendant may have "had no motivation in the earlier conviction to pursue defenses that would have been available to him under" our state's statute. In re Pers. Restraint of Lavery, 154 Wn.2d 249, 258, 111 P.3d 837 (2005). "Thus, facts untethered from the elements of the charged crime to which a defendant later pleads guilty are not within [our] focus." State v. Davis, 3 Wn. App. 2d 763, 780, 418 P.3d 199 (2018).

2

At Cook's sentencing, the trial court calculated his offender score as 6 based on two Georgia convictions of child molestation. Each of these convictions counted as 3 points. In calculating the offender score, the court relied on the State's assertion that Georgia's statute criminalizing child molestation was comparable to Washington's statute for child molestation in the third degree. Based on an offender score of 6, Cook's standard sentence range was 98 to 130 months' confinement. The trial court sentenced Cook to a minimum of 120 months of incarceration and a maximum of life.[1]

The state of Georgia alleged Cook committed two counts of child molestation on June 12, 1997. He pleaded guilty to the crimes on March 12, 1998. The Georgia statute in effect when the state charged Cook provided:

> A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.

Former GA. CODE ANN. § 16-6-4(a) (1995).

In contrast, the applicable Washington statute provided:

> A person is guilty of child molestation in the third degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim.

Former RCW 9A.44.089(1) (1994).[2]

---

[1] The State requested an exceptional sentence of 198 months.

[2] In 2021, our legislature amended this statute to remove the marriage element. LAWS OF 2021, ch. 142, § 7. In conducting a comparability analysis, "the elements of the out of state crime must be compared to the elements of a Washington criminal statute in effect when the foreign crime was committed." Lavery, 154 Wn.2d at 255.

Georgia's statute is broader than Washington's in two regards. First, our state's statute criminalized "sexual contact with" a child. Former RCW 9A.44.089(1). The Georgia statute criminalized "any immoral or indecent act to or in the presence of or with any child." Former GA. CODE ANN. § 16-6-4(a). Second, unlike the Georgia statute, the applicable Washington statute required the State to prove that the defendant is not married to the alleged victim. See former GA. CODE ANN. § 16-6-4(a); former RCW 9A.44.089(1). Because the conduct criminalized by the Georgia statute is broader than that criminalized by Washington's statute, the sentencing court may use Cook's Georgia convictions in calculating his offender score only if the conduct he committed in Georgia would have also resulted in a conviction under our state's statute. See Olsen, 180 Wn.2d at 473.

The facts Cook admitted when he pleaded guilty to the Georgia offenses would not constitute child molestation in the third degree under the Washington statute. Count 1 of the Georgia indictment provided that Cook "unlawfully [took] immoral, improper, and indecent liberties" with a child under 16 years of age "by touching her breasts and buttocks with intent to arouse and satisfy his sexual desires." Count 2 of the indictment stated that Cook "unlawfully [took] immoral, improper, and indecent liberties" with a child under the age of 16 by "placing his hands upon and near accused['s] own male sex organ in the presence of [the] child, with intent to arouse and satisfy his sexual desires."

The State concedes that the conviction for count 2 is neither legally nor factually comparable to Washington's third degree child molestation statute, and

the court should not have included it in Cook's offender score.  The State is correct.  The conduct Cook pleaded guilty to in count 2 did not involve sexual contact with another person.  Cf. former RCW 9A.44.089(1).  But this is not the only way in which the Georgia statute is broader than Washington's statute.  Unlike the Georgia statute, the applicable statute in our state included the element that the alleged victim was "not married to the perpetrator."  Former RCW 9A.44.089(1).  Neither count in the Georgia indictment provided this information, and Cook did not plead to any facts relevant to this element of the Washington offense.

The State nevertheless argues that the offense described in count 1 of the Georgia indictment is factually comparable to Washington's offense of child molestation in the third degree.  The State's argument is based on an evaluation submitted to the Georgia sentencing court after Cook's plea.  The evaluation describes Cook as a "single . . . male" and the victim as a "stranger."  But, as discussed above, in determining factual comparability, we consider only facts that are "clearly charged and then clearly" admitted to by the defendant or proved to a jury beyond a reasonable doubt.  Olsen, 180 Wn.2d at 476.  Otherwise, we cannot be confident that the facts "have been sufficiently proven in the trial."  Morley, 134 Wn.2d at 606.  When facing convictions for child molestation under the Georgia statute, Cook had no incentive to pursue defenses that may have been available under our state's narrower statute.  See Lavery, 154 Wn.2d at 258.

The Georgia statute is neither legally nor factually comparable to the applicable Washington statute.  Accordingly, if the State retries Cook and it results in a conviction, the sentencing court may not use either of the Georgia convictions in calculating his offender score.

_Brennan, J_