[No. 24657-4-III. Division Three. May 10, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT ALVIN SEXSMITH, *Appellant*.

500

*William D. Edelblute*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 KULIK, J. — Robert A. Sexsmith appeals his convictions for first degree child molestation, three counts of second degree child rape, first degree incest, and two counts of possession of depictions of a minor engaged in sexually explicit conduct, with sexual motivation. Mr. Sexsmith asserts that the trial court improperly admitted evidence of prior uncharged acts against a different victim. He also argues that the evidence was insufficient to support the charge of first degree incest. And, Mr. Sexsmith presents this court with a statement of additional grounds for review.

¶2 We conclude that the cumulative similarity between Mr. Sexsmith's abuse of two minor girls suggests a common plan and that the evidence of prior abuse of another victim was more probative than prejudicial. The trial court did not err in admitting the evidence of prior acts. The State concedes the evidence was insufficient to convict Mr. Sexsmith on first degree incest because the minor was unrelated to Mr. Sexsmith. Therefore, we reverse the first degree incest conviction and affirm the remaining convictions.

502

## FACTS

¶3 Robert Sexsmith lived with his girl friend and her daughter, C.H., for several years. C.H. was 7 years old when Mr. Sexsmith began living with her mother.

¶4 Mr. Sexsmith first began touching C.H. when she was 11. Mr. Sexsmith would have C.H. watch pornographic videos with him. Mr. Sexsmith began touching C.H. when she came out of the shower. He would also force C.H. to touch his penis. During this time, Mr. Sexsmith also took numerous nude photographs of C.H. When C.H. was 12, Mr. Sexsmith began making her perform oral sex on him when C.H.'s mother was away from the home.

¶5 Mr. Sexsmith routinely sodomized C.H. from the time she was 13 to when she left the home at age 18. He also performed oral sex on her. Many of these sexual encounters occurred in the basement of Mr. Sexsmith's mother's home.

¶6 If C.H. was in trouble with her parents, Mr. Sexsmith would sometimes offer to forgo punishment if C.H. would agree to perform sex acts on him. In addition to the nude photographs of C.H., Mr. Sexsmith also made numerous videotapes of C.H. and him having sex.

¶7 Mr. Sexsmith threatened C.H. that if she ever told anyone what he did to her, she would be separated from her family and put into foster care. When C.H. was older, Mr. Sexsmith would tell her that "he would rather go to jail for murder than go to jail for what he did to [C.H.]." Report of Proceedings (RP) at 459.

¶8 Mr. Sexsmith and C.H.'s mother eventually married when C.H. was 19. C.H. had a difficult time coping physically and mentally with the abuse she had suffered for years. She visited a doctor and tried several medications to deal with her physical symptoms. On the advice of a friend, C.H. sought counseling at the age of 20. During the counseling, C.H. revealed that she had been sexually abused by Mr. Sexsmith.

¶9 The counselor contacted law enforcement because C.H.'s younger brother was still living with Mr. Sexsmith

and C.H.'s mother. C.H. called her stepsister, A.S., and told her about the abuse. A.S. is 6 years older than C.H. A.S. stated that Mr. Sexsmith, her biological father, had molested her as well.

¶10 C.H. cooperated with law enforcement and allowed them to tape telephone conversations with Mr. Sexsmith. C.H. also wore a recording device that allowed police to record another conversation with Mr. Sexsmith in a restaurant. Apparently, during at least some of the recorded conversation, Mr. Sexsmith made clear references to having anal intercourse with C.H.

¶11 Mr. Sexsmith was charged with first degree child molestation, three counts of second degree child rape, first degree incest, and two counts of possession of depictions of a minor engaged in sexually explicit conduct, with sexual motivation.

¶12 At trial, the State presented testimony from A.S. regarding similar instances of abuse that she alleged were committed by her father. The court admitted this testimony under the "common scheme or plan" exception to ER 404(b). C.H. and A.S. stated that these acts occurred in the basement of Mr. Sexsmith's mother's home. Mr. Sexsmith forced A.S. to watch a pornographic video with him and to touch his penis. A.S. was 13 years old at the time. Mr. Sexsmith would reveal explicit details to A.S. regarding his sexual partners and activities. Similar to C.H., Mr. Sexsmith also forced A.S. to pose for nude pictures.

¶13 At trial, C.H. testified that she reviewed some of the pornographic videos that police recovered from Mr. Sexsmith's home. She identified herself as the person being fondled by Mr. Sexsmith on one of the tapes and testified that she was 15 years old at the time the video was made. A.S. was also able to identify the person on the videotapes as C.H.

¶14 Mr. Sexsmith was convicted of all charges at trial. He was sentenced to a term of incarceration of 280 months.

## ANALYSIS

A. *Prior Bad Acts*

██ ¶15 A trial court's decision to admit evidence is reviewed for abuse of discretion. *State v. Griswold*, 98 Wn. App. 817, 823, 991 P.2d 657 (2000).

██ ¶16 Evidence of prior bad acts is generally inadmissible to prove the character of a person and his propensity in conformity therewith. But such evidence may be admissible for other purposes. ER 404(b). Evidence of prior bad acts may be admitted to show a common scheme or plan. *See, e.g., State v. Lough*, 125 Wn.2d 847, 854-55, 889 P.2d 487 (1995).

¶17 A trial court must initially presume that any evidence of prior bad acts is inadmissible. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). In order to admit evidence of prior bad acts under the common plan or scheme exception, the prior acts must be (1) proved by a preponderance of the evidence, (2) admitted for the purpose of showing a common plan or scheme, (3) relevant to prove an element of the crime charged, and (4) more probative than prejudicial. *Id.* (quoting *Lough*, 125 Wn.2d at 852).

¶18 Here, there is no dispute that the alleged acts against A.S. were proved by a preponderance of the evidence or that the evidence was admitted by the trial court in order to prove a common plan or scheme. This court must determine whether the evidence was relevant to prove an element of any of the crimes charged and was more probative than prejudicial.

### Relevance of the Evidence

██ ¶19 Where a defendant is charged with child rape or child molestation, the existence of "a design to fulfill sexual compulsions evidenced by a pattern of past behavior" is probative of the defendant's guilt. *Id.* at 17-18. Evidence of past acts may be admissible to show a common

scheme or plan where the prior acts demonstrate a single plan used repeatedly to commit separate but very similar crimes. *Id.* at 19.

¶20 The past act and charged act must be substantially similar to be relevant and, therefore, admissible under this exception. *Id.* at 20. This means that the similarity must be clearly more than coincidental; it must indicate conduct created by design. *Lough*, 125 Wn.2d at 860. This court reviews the trial court's determination of the relevance of prior acts for abuse of discretion. *State v. Krause*, 82 Wn. App. 688, 695, 919 P.2d 123 (1996).

■ ■ ¶21 Here, there was a substantial similarity between the abuse of A.S. and C.H. Mr. Sexsmith was in a position of authority over both girls. He was A.S.'s biological father and appears to have been the primary father figure for C.H., beginning at age 7 until C.H. moved out at age 18. Both girls were about the same age when they were molested by Mr. Sexsmith.

¶22 In both cases, Mr. Sexsmith would isolate the girls when he abused them. While he resided at his mother's home, he molested both of the girls in the basement. In both cases, he forced the girls to take nude photographs, to watch pornography, and to fondle him.

¶23 There is a significant lapse of time between the sexual abuse of A.S. and the abuse of C.H. But the lapse of time is not a determinative factor in this analysis. *See State v. Baker*, 89 Wn. App. 726, 733-34, 950 P.2d 486 (1997).

¶24 While the individual features of the prior and charged acts of abuse are not in themselves unique, the cumulative similarity between the two suggests a common plan rather than coincidence. The trial court did not abuse its discretion in finding that A.S.'s testimony was relevant to the overall question of Mr. Sexsmith's guilt.

*More Probative than Prejudicial*

■ ¶25 In addition to relevance, evidence of the prior acts must be more probative than prejudicial. Substantial

probative value is needed to outweigh the potential prejudicial effect of ER 404(b) evidence. *DeVincentis*, 150 Wn.2d at 23. This is due to the inherent prejudice of evidence of prior bad acts. *Lough*, 125 Wn.2d at 863.

 ¶26 Generally, courts will find that probative value is substantial in cases where there is very little proof that sexual abuse has occurred, particularly where the only other evidence is the testimony of the child victim. *See Krause*, 82 Wn. App. at 695-96. This court reviews the trial court's balancing of probative value against prejudicial effect for abuse of discretion. *In re Det. of Halgren*, 156 Wn.2d 795, 802, 132 P.3d 714 (2006).

¶27 The trial court weighed the probative value of A.S.'s testimony against its potential for prejudice on the record. Based on the effect of Mr. Sexsmith's general denial of the charges, which meant that every element of the offenses was at issue, and the fact that credibility was central to the outcome of the case, the trial court determined that A.S.'s testimony was "clearly more probative than prejudicial." RP at 35. Nothing in the record demonstrates that the court abused its discretion or based its decision on untenable grounds or reasons. The court did not err in admitting evidence of A.S.'s abuse by Mr. Sexsmith.

*Harmless Error*

 ¶28 Even assuming the trial court erred in admitting A.S.'s testimony, this error is subject to harmless error analysis. *State v. Carleton*, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). Such an error is harmless if the remaining untainted evidence overwhelmingly supports a finding of guilt. *Id.* at 686-87. There is overwhelming evidence of guilt here.

 ¶29 Mr. Sexsmith made several pornographic tapes of himself engaging in sexual acts with C.H. C.H. was positively identified as the person in the video by several witnesses. The jury was given ample opportunity to examine C.H.'s features and evaluate for themselves whether she was the individual in the video.

¶30 In addition, Mr. Sexsmith admitted to anal intercourse during the taped conversations he had with C.H. These conversations were played for the jury. This evidence, taken with C.H.'s testimony regarding the sexual abuse, overwhelmingly supports the jury's verdict of guilt. There is no reasonable probability that the outcome of this trial would have been different had the trial court suppressed A.S.'s testimony. Any potential error here is harmless.

B. *First Degree Incest*

¶31 Mr. Sexsmith asserts that there was insufficient evidence to support his conviction for first degree incest.

¶32 A person is guilty of first degree incest if he or she knowingly engages in sexual intercourse with a person who is related to him or her as a descendant. Former RCW 9A.64.020(1) (1989). The term "descendant" includes stepchildren younger than 18 years of age. Former RCW 9A.64.020(3).

¶33 The State concedes that there was no evidence presented at trial that C.H. was Mr. Sexsmith's descendant at the time the abuse occurred. Therefore, both the State and Mr. Sexsmith agree that his conviction for first degree incest should be reversed.

¶34 But remand for resentencing is not required if this court is confident that the trial court would impose the same sentence. *See State v. Post,* 118 Wn.2d 596, 616, 826 P.2d 172, 837 P.2d 599 (1992). Here, Mr. Sexsmith was charged with, and convicted of, six other counts, including first degree child molestation, second degree child rape, and possession of depictions of minors engaged in sexually explicit conduct. The jury, by special verdict, found that Mr. Sexsmith committed the possession offenses with sexual motivation, which enhanced the penalties that Mr. Sexsmith faced for this charge.

¶35 Mr. Sexsmith was sentenced to a concurrent sentence of 280 months based on the maximum term of confinement for his most serious offense, second degree child

rape. There is no doubt that, upon remand, Mr. Sexsmith would receive the same sentence from the trial court. Therefore, we do not remand for resentencing.

¶36 We reverse the conviction for first degree incest.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

¶37 Mr. Sexsmith presents this court with a statement of additional grounds for review in which he claims that (1) the trial court erred by admitting videotaped evidence; (2) the trial court erred by denying his motion for a new trial; (3) the trial court erred by failing to permit Mr. Sexsmith a special hearing regarding the identity of the person on the videotape; (4) he received ineffective assistance of counsel; (5) the prosecutor committed misconduct by excluding a potential witness from the courtroom, suborning perjury, accepting stolen videotapes, and altering the evidence; (6) the trial court gave the jury the impression that the court favored the State's position; and (7) there was insufficient evidence to support his convictions for possession of depictions of a minor engaged in sexually explicit conduct, with sexual motivation. Each of these claims is without merit.

*Admission of the Videotape, Denial of Motion for Retrial, and Denial of Request for Special Hearing*

¶38 Mr. Sexsmith disputed at trial, and continues to dispute, that the individual depicted on the videotapes shown to the jury is C.H. The admission of the tape was the basis for his request for a special evidentiary hearing and for a new trial.

¶39 This court reviews the trial court's decision to admit evidence, deny the motion for retrial, and deny the request for a special hearing for clear abuse of discretion. *State v. McKenzie*, 157 Wn.2d 44, 61, 134 P.3d 221 (2006); *State v. Redmond*, 150 Wn.2d 489, 495, 78 P.3d 1001 (2003). Here there was no abuse of discretion. This evidence was probative of Mr. Sexsmith's guilt of several of the crimes charged.

¶40 Moreover, the question of the identity of the person in the videotape was a question of fact. These questions are left to the jury to decide. *See, e.g., State v. Levy*, 156 Wn.2d 709, 735, 132 P.3d 1076 (2006) (quoting *Jensen v. Shaw Show Case Co.*, 76 Wash. 419, 421, 136 P. 698 (1913)). Mr. Sexsmith was given ample opportunity to dispute the identity of the female on the tape and even presented a witness who testified that the person on the tape was a former girl friend of Mr. Sexsmith's and not C.H. The jury had the opportunity to view C.H. for themselves and determine whether they believed she was the female depicted on the tape. The trial court did not err in admitting the videotape evidence and leaving the issue to the jury to decide whether the person depicted on the tape was C.H.

*Ineffective Assistance of Counsel*

¶41 Mr. Sexsmith alleges that he received ineffective assistance of counsel because trial counsel did not seek suppression of the videotape evidence.[1] To prove that the failure to object constituted ineffective assistance of counsel, Mr. Sexsmith would have to show that the failure to object fell below prevailing professional norms, that the objection would have been sustained, and that the result of the trial would have been different if the evidence had not been admitted. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Mr. Sexsmith also must overcome the presumption that the decision not to object was the result of a deliberate tactical choice. *Id.*

¶42 Mr. Sexsmith can make none of the required showings. As noted above, the videotape evidence was admissible. Therefore, any objection to its admission would likely fail. And there was additional overwhelming evidence of guilt, so it is unlikely that the result would have been

---

[1] Mr. Sexsmith also makes several other allegations against his attorney, but none can be verified through the record. He has not provided this court with an affidavit in support of his allegations. He also fails to identify any prejudice flowing from these alleged acts. Therefore, he cannot demonstrate that these allegations form a basis to support his claim of ineffective assistance of counsel.

different had the videotape been excluded. Mr. Sexsmith did not receive ineffective assistance of counsel.

### Prosecutorial Misconduct

¶43 A criminal defendant alleging prosecutorial misconduct has the burden of establishing that the prosecutor's conduct was both improper and prejudicial. *State v. Korum*, 157 Wn.2d 614, 650, 141 P.3d 13 (2006).

¶44 Mr. Sexsmith first claims that the prosecutor committed misconduct by requesting that C.H.'s mother, who is also now married to Mr. Sexsmith, be excluded from the courtroom as a potential witness. But it is within the discretionary power of the court to exclude potential witnesses from the courtroom. *State v. Johnson*, 77 Wn.2d 423, 428, 462 P.2d 933 (1969). There is nothing in the record that suggests the State listed C.H.'s mother as a potential witness for an improper purpose. As such, there is no showing of improper conduct.

¶45 Mr. Sexsmith next asserts that the prosecutor committed misconduct by presenting edited versions of the tapes. However, the burden was on Mr. Sexsmith to object to the State's editing and request the complete tape be shown at trial. *See State v. Myers*, 133 Wn.2d 26, 35-36, 941 P.2d 1102 (1997). The record does not indicate that Mr. Sexsmith made any objection at trial. Therefore, this issue has been waived.

¶46 Next, Mr. Sexsmith claims that the prosecutor committed misconduct by accepting the videotapes and presenting them as evidence, even though the prosecutor knew that they were stolen. But Mr. Sexsmith's wife signed a consent form for law enforcement to search their shared residence. The evidence gathered by law enforcement was not "stolen" as alleged by Mr. Sexsmith.

¶47 Mr. Sexsmith's final allegation of prosecutorial misconduct is that the prosecutor knowingly suborned perjury. But he provides this court with no affidavits or proof for these allegations, and we therefore will not con-

sider them on appeal. *See, e.g., State v. McFarland,* 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

*Interrogation by the Court*

¶48 Mr. Sexsmith claims that the trial court gave the jury the impression that the court favored the State's position by questioning witnesses at trial. But ER 614(b) permits the interrogation of witnesses by the court. This allegation of error is without merit.

*Sufficiency of the Evidence*

¶49 Mr. Sexsmith's final allegation of error is that there was insufficient evidence to support his conviction for possession of depictions of minors engaged in sexually explicit conduct, with sexual motivation. Mr. Sexsmith does not identify what element of the possession charge was not supported by the evidence. Moreover, the jury viewed the alleged depictions of a minor when they watched the videotapes of Mr. Sexsmith engaging in sexual acts with C.H. There is no basis to conclude that the evidence on the possession charges was insufficient.

¶50 We reverse the conviction for first degree incest. We affirm the remaining convictions and the sentence.

Schultheis, A.C.J., and Kato, J. Pro Tem., concur.

Review denied at 163 Wn.2d 1014 (2008).