IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>v.<br><br>JAMES PLES HERRICK,<br><br>    Appellant. | No. 83757-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — James Herrick was sentenced to life in prison without parole following his jury trial conviction for three counts of child molestation, a third strike. Herrick challenges the admission of his prior indecent liberties convictions against his two young daughters, as well as the admission of his recorded statement to detectives about being a sex addict who should not be left alone with children. Herrick also challenges whether his prior convictions qualify as predicate offenses for his life-sentence. Herrick's prior convictions were admissible as evidence of a common scheme or plan, and he waived raising an ER 404(b) issue as to the sex addict statements. His claim of ineffective counsel for failing to object to the recording fails because the statements were evidence of the current crime. Lastly, his prior convictions constituted most serious offenses. We affirm.

Citations and pincites are based on the Westlaw online version of the cited material.

FACTS AND PROCEDURAL HISTORY

In 2016, Susan Ricardez and her two daughters, A.X. and H.P., lived with James Herrick and his wife for about six months because Ricardez was experiencing homelessness. Herrick's wife is H.P.'s biological grandmother. A.X. considered Herrick as her grandpa even though they had no biological relation and called him "Grandpa Jim." Prior to living together, Ricardez and her children would periodically visit Herrick for special events, and the children would sometimes stay at Herrick's home for weeks at a time. A.X. was around 9 to 10 years old when she lived with him.

Because Ricardez was experiencing a drug problem at the time, she often went out at night, leaving her children with Herrick after her children fell asleep. At the time, Ricardez knew that Herrick had previously been convicted of a crime, but she did not know which crime. After Ricardez and her children had already moved out of Herrick's home, she learned that Herrick's prior convictions involved the molestation of his own children. A concerned Ricardez asked A.X. if anyone had touched her in places she did not like or in places that were inappropriate. A.X. started shaking and crying hysterically, and she told her mother what had happened.

A.X. testified that at night, Herrick would frequently enter the living room where A.X. slept and touched her vagina, upper body, or her legs, both over and under her clothes. He sometimes would reposition her onto her back or stomach. She testified the touching did not feel good and that she pretended to be asleep during it. A.X. recalled a specific instance while she was in the laundry room folding laundry. She testified that Herrick came into the room and began hugging her and feeling her vagina and upper body. Herrick would tell A.X. not to tell anyone. A.X. testified that while

2

these things were happening she felt confused and scared, and she did not tell her mother about it because she wanted to push the situation away and forget it happened.

After A.X. told Ricardez what happened, Ricardez alerted the police. A detective contacted Herrick and he agreed to provide a recorded statement. The detective and Herrick discussed his prior convictions from 1980 and 1985 for indecent liberties involving his two daughters. Herrick explained that he rubbed their crotches when they were 6 and 7. The following exchange then occurred:

> [Detective]: So, you know, people can change over time. . . . However, we also know that those kind of like feelings never really leave anybody. You know what I mean?
> [Herrick]: A sex addict is just like a drug addict or an alcoholic.
> [Detective]: Right.
> [Herrick]: That never goes away.

Herrick stated that he had a good relationship with A.X. and she would not lie to him. He explained that when Ricardez would leave his home at night, A.X. became upset and would want Herrick to tuck her in, and he would sit with her until she went to sleep. Herrick denied molesting A.X., but he admitted that he should not be left alone with children. He acknowledged that "it was a stress to have to sit with [A.X.] until she went to sleep." He stated he knew it was not right for him to be alone with her. Herrick also explained that when his wife, on occasion, would ask him to change a diaper, he would refuse because that would not be appropriate "for [him] to do that."

After the investigation, Herrick was charged with two counts of child molestation in the first degree and the matter headed to trial.

In September 2021, the State moved to admit Herrick's 1980 and 1985 prior convictions for indecent liberties involving the sexual abuse of his daughters, who were ages 6 and 7, as evidence of a common scheme or plan. Herrick objected arguing that

3

under ER 404(b), character evidence is inadmissible and the prior convictions were too old, dissimilar, and too prejudicial. After conducting a formal ER 404(b) analysis, the court ruled that the evidence could be admitted:

> . . . [T]he analysis is . . . whether the State has proved by a preponderance of the evidence that the prior existed and Mr. Herrick was convicted, so certainly the State has established there's a preponderance of the evidence;
> Whether the evidence is admitted for the purposes of showing a common scheme or plan, it is. I think the State has persuaded me of that;
> Whether it's relevant to prove an element of the crime charged, and certainly the relevance of these prior convictions [is] . . . to prove there was an intent or the mens rea on the part of Mr. Herrick;
> And then whether it is more . . . probative than prejudicial. It is, as I already mentioned, extremely prejudicial, but that's not the end of the analysis. And . . . I do find that it is more probative than prejudicial in that it is not unduly or unfairly prejudicial.
> So the motion to admit prior convictions as evidence of both common scheme or plan and motive . . . is granted.

The court emphasized that A.X. and Herrick's daughters were similar ages at the time of the incidents, both A.X. and his daughters had trusting relationships with him, and that A.X. and his daughters both were in the same home with Herrick at the times of the incidents. The court asked defense counsel whether it was wrong to infer Herrick's daughters resided in the same home as him during the incidents:

> They were – without knowing more, my impression – and – and *please correct me if I'm wrong* – well, I guess my impression. And I'll tell you why my impression is this: That Mr. Herrick was in the same home as the two victims from the 1980s cases, and then the alleged victim in this case was in his home being taken care of or at least living in his home temporarily, along with Mr. Herrick's wife.

4

(emphasis added).  Defense counsel did not correct the court by arguing that there was not enough information to make this inference, but instead argued that the prior convictions were unduly prejudicial.[1]

The State also moved to admit Herrick's past convictions through Ricardez's testimony under res gestae to explain why Ricardez asked A.X. about her interactions with Herrick.  Ricardez learned of Herrick's sex offender status from Child Protective Services (CPS).  The court ruled that Ricardez could testify that she discovered Herrick's convictions were for sex offenses, but not who told her.  The court also held a CrR 3.5 hearing regarding the admissibility of the prerecorded interview, and ruled that his statements were voluntary and thus admissible.

Neither Herrick or his daughters testified at trial.  The State introduced evidence of Herrick's past incidents with his daughters through his own recorded statements.

The jury convicted Herrick of three counts of child molestation in the first degree.  The court sentenced Herrick to life in prison as a persistent offender.  Herrick appeals.

---

[1] About a year and a half earlier, to support a defense motion to continue trial, defense counsel told the court, "[The State] provided me with approximately 950 pages of CPS records. We have some additional records from a prior sex offense that we are tracking down. The State is providing me copies of those."  The record includes police reports from the 1985 incident that listed Herrick and his daughters as having the same address.  It is not clear from the record if defense had this report at the time of the September 2021 hearing.

DISCUSSION

Common Scheme or Plan

Herrick first contends that his prior convictions for indecent liberties from 1980 and 1985 involving his daughters should not have been admitted as evidence of a common scheme or plan under ER 404(b).[2]  We disagree.

This court reviews the interpretation of an evidentiary rule de novo.  State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) (citing State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.2d 119 (2003)).  When the trial court correctly interprets the rule, this court reviews the trial court's decision to admit evidence under ER 404(b) for an abuse of discretion.  Id. (citing DeVincentis, 150 Wn.2d at 17; State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).  "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons."  State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  This rule not only includes prior bad acts and unpopular behavior, but also any evidence offered "to 'show the character of a person to prove the person acted in conformity' with that character at the time of a crime."  Foxhoven, 161 Wn.2d at 175 (quoting State v. Everybodytalksabout, 145 Wn.2d 456, 466, 39 P.3d 294 (2002)).  However, a trial court

---

[2] Herrick also challenges the trial court's determination that his prior convictions were also admissible under res gestae.  The State concedes that res gestae would probably not have independently justified admission of Herrick's prior offenses under ER 404(b).  Because we conclude that the prior convictions were admissible as evidence of a common scheme or plan, we need not further address admissibility under res gestae.

may admit ER 404(b) evidence for another purpose, such as proof of motive, plan, or identity. Foxhoven, 161 Wn.2d at 175.

Here, the challenged evidence was offered and admitted to show a common scheme or plan. "Evidence of prior bad acts may be admitted to show a common scheme or plan." State v. Sexsmith, 138 Wn. App. 497, 504, 157 P.3d 901 (2007) (citing State v. Lough, 125 Wn.2d 847, 855, 889 P.2d 487 (1995)).

The trial court must initially presume that any evidence of prior bad acts is inadmissible. DeVincentis, 150 Wn.2d at 17. Before admitting evidence under ER 404(b), the trial court must "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove the element of the crime charged, and (4) weigh the probative value against the prejudicial effect." Thang, 145 Wn.2d at 642.

Herrick's only challenges involve relevance and prejudice.

*A. Relevance*

When a defendant is charged with child molestation, the existence of "a design to fulfill sexual compulsions evidenced by a pattern of past behavior is probative" of the defendant's guilt. DeVincentis, 150 Wn.2d at 17-18. "Evidence of past acts may be admissible to show a common scheme or plan where the prior acts demonstrate a single plan used repeatedly to commit separate but very similar crimes." Sexsmith, 138 Wn. App. at 504-05. To be relevant, the past act and charged act need to be substantially similar to be admitted under this exception—this means the similarity must be more than coincidental; it must indicate conduct created by design. Id. (citing

7

DeVincentis, 150 Wn.2d at 20); Lough, 125 Wn.2d at 860. Whether the prior offenses are similar enough to the charged crime to warrant admission is left to the discretion of the trial court. Foxhoven, 161 Wn.2d at 177.

Herrick cites State v. Gunderson, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014) to suggest that the State must satisfy a heightened standard of "overriding probative value" before admitting prior sexual misconduct. However, Gunderson did not involve a child sex allegation. Gunderson was about the felony violation of a no-contact order and the State's attempt to introduce evidence of past domestic violence incidents to impeach the alleged victim who had not made any prior statements. Id. In holding that the prior bad acts should have been excluded under ER 404(b), the Supreme Court explained,

> Much like in cases involving sexual crimes, courts must be careful and methodical in weighing the probative value against the prejudicial effect of prior acts in domestic violence cases because the risk of unfair prejudice is very high. See Saltarelli, 98 Wash.2d at 363, 655 P.2d 697 (finding that "[a] careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudicial potential of prior acts is at its highest"). To guard against this heightened prejudicial effect, we confine the admissibility of prior acts of *domestic violence* to cases where the State has established their overriding probative value, such as to explain a witness's otherwise inexplicable recantation or conflicting account of events.

Id. (emphasis added) (alteration in original) (citing State v. Magers,164 Wn.2d 174, 186, 189 P.3d 126 (2008)). The court added, "This opinion should not be read as confining the requisite overriding probative value exclusively to instances involving a recantation or an inconsistent account by a witness." Gunderson, 181 Wn.2d at 925, n.4. In a later domestic violence case, the Supreme Court affirmed the admission of evidence of past domestic violence because "the trial court properly found that the State established the

overriding probative value of this evidence because the evidence went directly to a necessary element of the crime." State v. Ashley, 186 Wn.2d 32, 45, 375 P.3d 673 (2016).

However, other than quoting the language "overriding probative value," Herrick does not elaborate on how that phrase changes any parameters already required in existing caselaw related to child sex abuse cases. The State correctly points out that the Supreme Court's "overriding probative value" language has yet to appear in child sex abuse cases.

The Sexsmith court determined that ER 404(b) evidence was properly admitted under the common scheme or plan exception when the past act was substantially similar to the circumstances of the case. Sexsmith, 138 Wn. App. at 505. It reasoned that there was substantial similarity between the abuse of two minor girls when the defendant was in a position of authority over both girls, and both girls were around the same age. Id. Additionally, it emphasized that in both instances of abuse, Sexsmith isolated the girls when he abused them, and the nature of the abuse was also the same. Id. The court noted that although there was a significant time lapse between the abuse of both girls, the lapse of time was not a determinative factor in the court's analysis. Id. (citing State v. Baker, 89 Wn. App. 726, 734, 950 P.2d 486 (1997)).

Similar to the circumstances in Sexsmith, in the instant case, Herrick also targeted girls in the same age-range in both cases. While A.X. was around 9 or 10 years old, his daughters were 6 and 7 years old during the relevant times. Herrick argues that the trial court did not know whether his daughters resided with him at the time of the incidents and it was improper to presume such facts to support its finding of

common scheme or plan. We need not determine if the court's "impression" that the daughters lived in the same house as Herrick was a reasonable inference because the undisputed facts were sufficient to establish that the similarities were more than coincidental. Herrick had a familial or familial-type relationship with the previous victims and A.X. The previous victims were his daughters. Herrick treated A.X. like family, tucking her into bed and having her call him "Grandpa Jim." All the girls were around the same age, between 6 and 10. Finally, the nature of the incidents was similar. Herrick was alleged to have rubbed A.X.'s genitals, and he also admitted doing the same to his daughters.

Herrick argues these similarities were insufficient because they would be present in most child sex offenses. However, in Gresham, our Supreme Court rejected the argument that "a common scheme or plan must be distinct from common means of committing the charged crime," holding that the "relevant commonality need not be a unique method of committing the crime." 173 Wn.2d 405, 423, 269 P.3d 207 (2012) (citing DeVincentis, 150 Wn.2d at 20-21).

The trial court did not abuse its discretion by determining the facts of the past incidents and the current charges were substantially similar to meet the parameters of common scheme or plan.

*B. Prejudicial Effect*

Evidence of prior bad acts also must be more probative than prejudicial. Thang, 145 Wn.2d at 642. Accordingly, the court should exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. DeVincentis, 150 Wn.2d at 23. Unfair prejudice may occur where evidence "is likely to

10

stimulate an emotional response rather than a rational decision." State v. Barry, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). The mere possibility of an emotional reaction, however, does not necessarily render evidence inadmissible. Id. at 801. This court reviews the trial court's balancing of probative value against prejudicial effect for abuse of discretion. Id. at 801-02.

Prior bad acts are inherently prejudicial. Lough, 125 Wn.2d at 863. "However, evidence is not inadmissible under ER 403 simply because it is detrimental or harmful to [the defendant]; it is unfairly prejudicial only if it has the capacity to skew the truth-finding process." State v. Read, 100 Wn. App. 776, 782-83, 998 P.2d 897 (2000). The adverse party, Herrick, has the burden of showing that the evidence is unfairly prejudicial. Gresham, 173 Wn.2d at 421.

Courts have concluded that probative value outweighs prejudice in cases where there is a general denial and the only other evidence of the crime is the testimony of the child victim. Sexsmith, 138 Wn. App. at 497. Here, the only testifying witness to the crime was A.X. Herrick's daughters did not testify, and the facts of the prior crimes were limited in detail and no more egregious than the current charges. The trial court did not abuse its discretion in finding the probative value of the evidence outweighed the danger of unfair prejudice.

### Prerecorded Interview

Herrick contends that the court should have conducted an ER 404(b) analysis to determine whether his comment that he had a sex addiction involving children should have been admitted. Herrick waived this argument.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal." State v. McFarland, 127 Wn.2d 322, 332–33, 899 P.2d 1251 (1995). A violation of ER 404(b) or ER 403 is not of constitutional magnitude and cannot be raised for the first time on appeal. State v. Chase, 59 Wn. App. 501, 508, 799 P.2d 272 (1990).

Herrick did not object to its admission below. He now argues that his pre-trial motion to exclude any prior bad acts sufficiently noted his objection below. However, that motion in limine specifically related to Herrick's past indecent liberties convictions and a polygraph examination done by police. The motion was denied as to the prior convictions.

Not only did Herrick fail to raise the sex addiction issue, the trial court never issued any ruling as to the same so that the motion could even be considered a standing objection. A party who loses a motion in limine is typically deemed to have a standing objection regarding that issue. State v. Powell, 126 Wn.2d 244, 256, 893 P.2d 615 (1995). However, a standing objection does not arise when the judge either does not make a specific ruling or makes a tentative ruling subject to later developments at trial. State v. Roosma, 19 Wn. App. 2d 941, 948, 498 P.3d 59 (2021). "An objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review." State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

The court denied Herrick's motion to exclude ER 404(b) evidence regarding his prior convictions and nothing else. His counsel had multiple opportunities to object to the sex addiction evidence but failed to do so. This issue was not preserved.

Herrick, having failed to preserve the issue by making an objection, next contends that defense counsel was ineffective when he failed to object to the introduction of the sex addiction evidence.

Both the United States and Washington Constitutions guarantee a criminal defendant the right to effective assistance of counsel. State v. Lopez, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018) (citing U.S. CONST. amend. VI; WASH. CONST. art. I, § 22). To show defense counsel was ineffective, Herrick must demonstrate that (1) counsel performed deficiently and that (2) the deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failing to satisfy either part of this analysis ends the inquiry. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

The defendant has the burden to show that defense counsel's performance was deficient. State v. Vazquez, 198 Wn.2d 239, 248, 494 P.3d 424 (2021). To show deficient conduct, the defendant must demonstrate that an objection would likely have been sustained. Id. "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." State v. Neidigh, 78 Wn. App. 71, 77, 895 P.2d 423 (1995). Claims of inefficient assistance of counsel are mixed questions of law and fact, and this court reviews them de novo. Lopez, 190 Wn.2d at 117.

Herrick contends that his counsel should have objected to the trial court admitting the sex addict evidence without conducting an ER 404(b) analysis. Had the court conducted the proper balancing test, he argues, the admission would have been excluded as a prior bad act. The State argues the challenged evidence is a mental

state and not an "act" contemplated by ER 404(b).  Based on the facts in this case, the State is correct.

ER 404(b) excludes "other crimes, wrongs, or acts."  The rule does not define these terms.  "The traditional notion behind the rule is that 'prior misconduct', including 'acts that are merely unpopular or disgraceful,' is inadmissible to show that the defendant is a 'criminal type' and is likely to have committed the crime for which charged."  State v. Halstien, 122 Wn. 2d 109, 126, 857 P.2d 270 (1993) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 114 at 383-84 (3d ed. 1989)).

"Rule 404(b) thus provides that *prior misconduct* is not admissible to show that a defendant is a 'criminal type', and is thus likely to have committed the crime for which he or she is *presently charged*. However, crimes or misconduct *other than the acts charged* may be admitted for a variety of other reasons including the proving of a scheme or plan of which the offense charged is a manifestation."  Lough, 125 Wn. 2d at 853 (emphases added).

The cases Herrick relies on are distinguishable because each case contemplates ER 404(b) evidence related to past incidents that were distinct from the charged crimes.  See State v. Crossguns, 199 Wn.2d 282, 286, 505 P.3d 529 (2022) (testimony from family members regarding uncharged sexual abuse by the defendant against the victim); State v. Gower, 179 Wn.2d 851, 853, 321 P.3d 1178 (2014) (evidence that defendant committed other similar crimes against two other alleged juvenile victims); Gresham, 173 Wn.2d at 433 (evidence that defendants had previously committed sex offenses against other children); State v. Saltarelli, 98 Wn.2d 358, 360, 655 P.2d 697

(1982) (testimony that defendant forced another woman in his bedroom and attempted to remove her clothes).

In the instant case the challenged evidence does not pertain to *other* crimes, wrongs, or acts that are distinct from the charged offenses. Herrick challenges his own voluntary responses to detectives questioning him about A.X.'s allegations and the time she spent with Herrick. It is in this context that Herrick compared sex addiction to drug addiction or alcoholism—something "[t]hat never goes away." He said it was "a stress" to have to sit with A.X. until she went to sleep and that he knew "it was not right for [him] to be alone with her." While he denied molesting A.X., he agreed that he should never be alone with children.

The State was not introducing evidence of prior misconduct distinct from the charged crimes. The State was introducing relevant evidence as to Herrick's mental state related to the alleged offenses. The State was required to prove that Herrick had "sexual contact" with A.X. The jury was instructed that sexual contact had to be "done for the purpose of gratifying sexual desires of either party." Herrick has not demonstrated that a defense counsel objection would likely have been sustained. Thus, we need not address the prejudice prong.

Herrick's claim for ineffective assistance of counsel fails.

<u>Prosecutorial Misconduct</u>

Herrick next argues that the prosecutor committed misconduct by discussing Herrick's statement that he had a sex addiction and that it was used as propensity evidence in his closing statement when the prosecutor said "[i]t is something the defendant has done before that he's doing again." Because defense counsel did not

15

object to the prosecutor's statement, Herrick carries the burden of showing the remark was flagrant, ill-intentioned, and incurable. State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). When a defendant alleges prosecutorial error, the defendant assumes the burden of demonstrating both (1) that the prosecutor's conduct was improper, and (2) that he suffered prejudice as a result. State v. Schlichtmann, 114 Wn. App. 162, 167, 58 P.3d 901 (2002). Prosecutors have wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

While using the term, "done before that he's doing again" does give us pause, we must consider that statement in context. See Thorgerson, 172 Wn.2d at 442 (defendant must establish that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial). During closing argument, the prosecutor acknowledged that A.X.'s credibility was key as she was the only testifying witness to the abuse. The prosecutor highlighted what the jury could consider in evaluating her credibility, including the fact that the circumstances of what she experienced were similar to what Herrick's daughters experienced. The prosecutor noted that A.X.'s report was "very, very similar," and that the prosecutor conveyed that he was not only referring to the abuse but also the "power dynamic." The prosecutor continued,

> Mr. Herrick admitted to previously abusing her [sic] own daughters. Here, what we have is a young child in the [ . . . ] care of the defendant inside their home getting abused. That similarity is troubling.
> Now, to be fair, I can't want you all to convict Mr. Herrick just because she [sic] had two prior convictions. Okay? That's not appropriate. But that evidence is relevant to support what [A.X.] reported, right?

> There is legally what is called a common plan[] or scheme. Right? It is something the defendant has done before that he's doing again. And we know the reasoning why he's doing it. He admitted in the interview, right, that he is a sex addict and it is a problem . . . that doesn't go away. He admitted it's like a life-long thing. And he admitted, as part of that interview – and you can listen to it again, if you like – on how he's fake [sic] fixated on children. Is – does that make the fact what [A.X.] tells you true more or less likely?"

Viewed in context, the prosecutor did not argue that the jury should convict Herrick based on propensity. The prosecutor emphasized that the jury could consider the evidence of common scheme or plan in determining motive and A.X.'s credibility. A prosecutor does not commit misconduct by presenting admissible evidence. State v. Nordlund, 113 Wn. App. 171, 189, 53 P.3d 520 (2002). Additionally, any concern Herrick may have had that the jury could consider the sex addiction for improper propensity evidence could have been cured with a limiting instruction, which he did not request.[3]

Viewing the statement in context of the entire argument, we cannot conclude that the prosecutor committed misconduct. Even if the challenged statement could be considered improper, it was not so flagrant and ill-intentioned that it could not be cured with an instruction.

### Three Strikes

Herrick lastly contends for the first time on appeal that the trial court erred in sentencing Herrick as a persistent offender to life without parole. We disagree.

In 1993, Washington voters passed Initiative 593, entitled "Persistent Offender Accountability Act" (POAA), also known as the "three strikes and you're out" law. Under

---

[3] Herrick declined to provide a limiting instruction as to the prior convictions. Herrick never proposed a limiting instruction as to the sex addiction evidence.

the POAA, a "persistent offender" shall be sentenced to a term of total confinement for life without possibility of release. State v. Knippling, 166 Wn.2d 93, 98, 206 P.3d 332 (2009); RCW 9.94A.570. We review interpretation of the POAA de novo. State v. Keller, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001). The government bears the burden of proving by a preponderance of the evidence the existence of prior convictions as predicate strike offenses. State v. Witherspoon, 180 Wn.2d 875, 893, 329 P.3d 888 (2014).

At sentencing, the court sentenced Herrick to life without parole because it found the State established that Herrick had two separate convictions for indecent liberties at two separate times, and he was sentenced for those convictions. The court found that each of the prior cases constituted as "most serious offenses" under RCW 9.94A.030(32)(a) and (h), and under RCW 9.94A.570, Herrick is defined by statute as a "persistent offender." The court acknowledged it had no discretion under Washington's three-strike law, and defense counsel agreed.

Herrick now argues that his two prior convictions for indecent liberties against a person under the age 14 are not actually "strike" offenses. Although the specific subsection he was convicted under in the 1980s no longer exists, the SRA expressly identifies his indecent liberties convictions as "most serious offenses." RCW 9.94A.030(32)(u)(i).

RCW 9.94A.030(37)(a)(ii) defines "persistent offender" as an offender who is convicted of three "most serious offenses":

Has, before the commission of the offense under (a) of this subsection, been convicted as an offender *on at least two separate occasions*, whether in this state or elsewhere, of felonies that under the laws of this state would be *considered most serious offenses* and would be included in

18

the offender score under RCW 9.94A.525; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted . . .

(Emphases added.)  "Most serious offenses" are defined by statute, including any felony defined under any law as a class A felony.  RCW 9.94A.030(32)(a).  Child molestation in the first degree is a class A felony.  RCW 9A.44.083.  Additionally, RCW 9.94A.030(32)(u)(i) specifically states that convictions for indecent liberties from 1980 to 1985 constitute as a most serious offense:

A prior conviction for indecent liberties under RCW 9A.44.100(1) (a), (b), and (c), chapter 260, Laws of 1975 1st ex. sess. as it existed until July 1, 1979, RCW 9A.44.100(1) (a), (b), and (c) as it existed from July 1, 1979, until June 11, 1986, and RCW 9A.44.100(1) (a), (b), and (d) as it existed from June 11, 1986, until July 1, 1988.

Herrick's first offense was in 1980, where he pled guilty to one count of indecent liberties in violation of former RCW 9A.44.100 (1979).  Herrick was convicted of two additional counts of indecent liberties under RCW 9A.44.100(b) in 1985.  They constituted as most serious offenses under RCW 9.94A.030(32)(u)(i).  These convictions counted toward his strike offenses, and his current convictions for child molestation counted as his third strike offense.  The court did not err in sentencing Herrick to life without parole as a persistent offender.

We affirm.

_____
Coburn, J.

WE CONCUR:

_____
Díaz, J.

_____
Birk, J.

19